**Danny P. EMMONS, Plaintiff-Appellant,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Defendant-Appellee.**

**No. 80–4012.**

United States Court of Appeals, Fifth Circuit.

April 7, 1983.

---

Gothard J. Reck, Warren A. Goldstein, New Orleans, La., for plaintiff-appellant.

Warren M. Schultz, Jr., New Orleans, La., for defendant-appellee.

Before GOLDBERG, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from a judgment dismissing appellant's cause of action brought under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., because it was barred by that act's three-year statute of limitations, 45 U.S.C. § 56. The primary question is whether appellant knew that his injury was work related more than three years before he filed suit against appellee. We hold that there is sufficient evidence to support the trial court's finding that appellant's cause of action was barred by limitations. The trial court's judgment is therefore affirmed.

## I.

### FACTS

Appellant Danny Pat Emmons ("Emmons") contracted polio when he was four years old. At age thirteen, corrective surgery was completed on both his ankles, and his left ankle was fused. The polio and the corrective surgery left Emmons with a slight, but noticeable, limp. Emmons was, however, thereafter able to lead a normal, active life.

In the spring of 1972, Emmons applied for a clerical position with appellee Southern Pacific Transportation Company ("Southern Pacific").[1] Emmons was given a preemployment physical by Southern Pacific's physician, Dr. Samuel Logan. Emmons testified at trial that Dr. Logan noticed the surgical scars on his ankles and that he told Dr. Logan that he had had polio. Dr. Logan's report, however, showed that Emmons had never suffered any severe illnesses, sustained any injuries, or undergone any operations. Dr. Logan approved Emmons for work as an extra board clerk.

Emmons began working for Southern Pacific on May 5, 1972. After working as an extra board clerk for about seven months, Emmons applied for a better paying job with Southern Pacific as a switchman-brakeman. Because Emmons had been with Southern Pacific less than one year, he was not given another physical.

Emmons's application was approved by Southern Pacific, and he began working as a brakeman on February 19, 1973. In the latter part of 1974, Emmons began having problems with his right ankle. This ankle problem became progressively worse, and Emmons began to miss work with some degree of regularity, especially after December 1975. Emmons, however, did not say anything about his ankle problem to anyone in a supervisory capacity with Southern Pacific for fear of losing his job, and nothing in Southern Pacific's records showed that Emmons was having a problem with his ankle.[2]

On August 12, 1977, Southern Pacific summoned Emmons before an employment committee which met to determine the cause of Emmons's excessive absenteeism. At that hearing, Emmons, for the first

1. Emmons testified at trial that he learned about an opening for a clerical position from a supervisor at Southern Pacific. Emmons added, however, that the supervisor did not know that he had suffered from polio.

2. Robert Conners, a Southern Pacific supervisor, testified at trial that he talked with Emmons about his absenteeism in early 1977. Emmons said nothing about a physical disability, but instead told Conner that his absenteeism was caused by mechanical problems with his automobiles.

time, told Southern Pacific's officials that his work as a brakeman was causing a problem with his right ankle.[3] Emmons, however, was fired for excessive absenteeism on August 24, 1977. On August 25, 1977, Emmons's physician, Dr. Kenneth Saer, told him that his ankle problem was work related.

## II.

## THE TRIAL

On November 1, 1978, Emmons filed suit against Southern Pacific, alleging, among other things, that Southern Pacific was negligent (1) in assigning him to a position for which he was physically unsuited, (2) in failing to require an additional physical examination before assigning him to work as a brakeman, and (3) in failing to require him to undergo periodic physical examinations. Southern Pacific answered, and it pleaded as a defense that Emmons's complaint failed to state a claim upon which relief could be granted.

The issue of limitations was not raised as an affirmative defense in Southern Pacific's answer, nor was it listed by Southern Pacific as an issue in the pretrial order. During the trial, however, Emmons testified that he knew in 1974, after a visit to one of Dr. Saer's associates, Dr. Ray Haddad, that his ankle problem was work related. At the close of all the evidence, Southern Pacific moved for a directed verdict on the ground that Emmons's cause of action was barred by limitations under 45 U.S.C. § 56. The trial court reserved ruling on the motion,

for the parties agreed to send the case to the jury, and if a verdict was returned for Emmons, then to submit the limitations issue to the trial court for adjudication.[4]

On the issue of Southern Pacific's negligence, the trial court charged the jury as follows:

"The plaintiff contends that the railroad was negligent in allowing the plaintiff to work as a [brakeman] when it knew, should have known, that his prior polio condition would worsen and deteriorate as a result of his performance of required duties as a [brakeman].

"And the plaintiff further contends that the defendant was negligent in failing to have the plaintiff medically examined in connection with his application for the job of [brakeman].

" . . .

"Where a railroad has prior knowledge of or should have known or ascertained an employee's pre-existing medical condition, it may be responsible in damages if it negligently assigns an employee to a duty which aggravated such pre-existing condition.

"Also, where a railroad undertakes pre-employment medical examination of a job applicant, it has a duty to conduct such examinations with reasonable care, in order to determine the fitness of the applicant for the job sought."

The jury found that Southern Pacific was negligent; that its negligence aggravated Emmons's preexisting condition; and that

---

**3.** Emmons testified at trial that he played softball with some Southern Pacific supervisors in 1972; that they asked him about his limp; and that he told them about it. There is, however, no evidence which identifies these supervisors or whether they remained at Southern Pacific after Emmons became a switchman-brakeman, or whether they knew that his work was causing his ankle problem.

**4.** The trial court read the following agreement into the record before it charged the jury or ruled on objections to the charge:

"In connection with the motion for directed verdict made by the defendant on the ground that the claim herein was prescribed at the time of the filing of this action, in accordance

with the understanding reached in the charge conference, at which we discussed the procedure for disposition of this plea of prescription, in the event there is a verdict for the plaintiff, the prescriptive plea will be considered and decided by the Court, possibly after opportunity has been afforded for the production of further evidence relating to that particular issue.

"The determination of whether or not further evidence will be required or permitted will be deferred until after the jury has rendered its verdict.

"It may well be that the jury's verdict may make it unnecessary for the Court to consider the prescriptive plea at all."

Emmons was 29.2 percent contributorily negligent. The jury awarded Emmons $100,000.

After receiving the jury's verdict, the trial court asked the parties to think about whether they would want to produce additional evidence on the limitations issue, and the court set a date for a conference. When the conference with the court was held several days later, Emmons's attorney declined the court's offer to receive additional evidence respecting the limitations issue. Instead, counsel for both parties agreed that the issue should be decided on the testimony produced at trial.[5] When Emmons's attorney filed his brief, however, he included, without verification, documents purporting to be copies of Dr. Haddad's notes of the 1974 examination of Emmons, which revealed that Emmons had seen Dr. Haddad for an ankle injury sustained while playing ball. Because Emmons's attorney had agreed that the limitations issue would be decided on the evidence produced at trial, the trial court refused to consider the purported copies of Dr. Haddad's notes.

The trial court held that Emmons's cause of action was barred by limitations. The court found that Southern Pacific's negligence was not continuing because it had no knowledge that Emmons's duties as a brakeman were aggravating his preexisting condition, and that Emmons's injury manifested itself before November 1, 1975.

### III.

### WAIVER OF LIMITATIONS

Emmons's first contention concerns the propriety of Southern Pacific's assertion of limitations to bar his cause of action. Emmons argues that the trial court erred in allowing Southern Pacific to raise the issue because it was not pleaded as an affirmative defense or listed as an issue by Southern Pacific in the pretrial order. We disagree.

---

**5.** The agreement between the parties appears in a minute order as follows:

"Counsel agreed that no further evidence is needed and that the issue will be submitted

The limitations issue was suggested on the face of Emmons's complaint. In paragraph VII, Emmons alleged that "[o]n or about February 9, 1973, plaintiff commenced his duties as a brakeman." In paragraph VIII, the complaint alleged that "approximately two years after commencing his duties as a brakeman, plaintiff began to experience difficulty and pain in his legs and ankles." Approximately two years after starting work as a brakeman would have been in the spring of 1975, and without the limitations period.

Southern Pacific, in its answer, admitted the allegations of paragraph VII, but denied the allegations of paragraph VIII insofar as they concerned when Emmons's injury began to manifest itself. The answer also alleged that the complaint failed to state a claim upon which relief could be granted.

In the pretrial order, the ultimate facts claimed by Emmons included the fact that "[a]pproximately two years after commencing his duties as a brakeman, plaintiff began to experience pain . . . ."

■ Compliance with 45 U.S.C. § 56 is a condition precedent to an injured employee's recovery in a FELA action. *Gulf, Colorado & Santa Fe Railroad Company v. McClelland,* 355 F.2d 196, 197 (5th Cir.1966). Failure to timely bring suit not only bars the claimant's remedy, but it also destroys the employer's liability. *Dixon v. Martin,* 260 F.2d 809, 811 (5th Cir.1958).

"For if a statute of limitations is thus made a limitation upon the continued existence of the right, rather than a mere bar to suit upon it, it goes to the substance of the plaintiff's claim so that he must show himself to be within the statute in order to recover and the defendant, therefore, need not specially plead the defense under Civil Procedure Rule 8(c), . . ." *Goodwin v. Townsend,* 197 F.2d 970, 971 (3d Cir.1952).

to the court upon the memoranda of counsel and the trial record. . . ."

The burden is therefore on the claimant to allege and to prove that his cause of action was commenced within the three-year period. *Carpenter v. Erie R. Co.,* 132 F.2d 362, 363 (3d Cir.1942), *cert. denied,* 318 U.S. 788, 63 S.Ct. 983, 87 L.Ed. 1155 (1943). In a FELA action, limitations is "nothing more than a negative defense, ... one which tends to disprove one or all of the elements of a complaint. An affirmative defense is properly concerned with the pleading of a matter not within the plaintiff's prima facie case, that is, pleading matter to avoid plaintiff's cause of action. [Citations omitted.] While the affirmative defenses are governed by Rule 8(c) of the Federal Rules of Civil Procedure, Title 28, United States Code, the negative defenses are governed by Rule 8(b) of the same federal rules. [Footnotes omitted.]" *Gilbert v. Eli Lilly & Co. Inc.,* 56 F.R.D. 116, 123–24 (D. Puerto Rico 1972); *see also Sanden v. Mayo Clinic,* 495 F.2d 221, 224 (8th Cir.1974).

These authorities reflect that Southern Pacific was not required to affirmatively plead limitations under Fed.R.Civ.P. 8(c).

■ The limitations issue was not listed by Southern Pacific in the pretrial order. Nothing in Fed.R.Civ.P. 16, however, "suggests that a party waives or admits an issue as to which his opponent has the burden of proof by failing to include the issue in his pre-trial stipulated list of remaining issues." *Pacific Indemnity Company v. Broward County,* 465 F.2d 99, 103 (5th Cir.1972). Emmons had the burden to prove that his cause of action was commenced within three years after he realized that his ankle problem was work related.

■ There is also another reason why the limitations issue was properly considered by the trial court. A trial court has broad discretion in deciding whether to admit evidence on an issue not included in the pretrial order. *Calamia v. Spivey,* 632 F.2d 1235, 1237 (5th Cir.1980). A trial court does not abuse its discretion in allowing evidence to be received on an issue not included in the pretrial order where the opposing party fails to object or to claim surprise to the introduction of evidence which plainly raises a nonlisted issue or where new disclosures are made during the trial which plainly raise a new issue. *Bucky v. Sebo,* 208 F.2d 304, 305 (2d Cir.1953); *Manbeck v. Ostrowski,* 384 F.2d 970, 975–76 (D.C.Cir. 1967), *cert. denied,* 390 U.S. 966, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968).

"However, the introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue." *International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888, 890 (5th Cir.1977).

■ Here, Emmons changed his testimony respecting the year when he realized that his ankle problem was work related. After Emmons rested, Southern Pacific recalled him to the stand to question him about when he realized that his injury was work related. The obvious and sole purpose of this examination was to prove that his cause of action was barred by limitations. The limitations issue was therefore plainly raised by Southern Pacific without objection on the part of Emmons's attorney during or after trial.[6]

"[I]f the parties actually litigate without objection issues not raised in the order, there is little reason to enforce pretrial elimination of the issues. The trial court can treat the pretrial order as amended by the consent of the parties *See Mains v. United States,* 508 F.2d 1251, 1259 (6th Cir.1975); *Bucky v. Sebo,* 208 F.2d 304, 305 (2d Cir.1953). In such a case, the court properly can enter a judgment that decides issues outside the scope of the original pretrial order." *Perfection-Cobey Company v. City Tank Corp.,* 597 F.2d 419, 420–21 (4th Cir.1979).

■ The record shows that Emmons's attorney agreed to waive a jury trial on the

---

6. Although Emmons's attorney stated at oral argument before this Court that he objected to Southern Pacific's assertion of the limitations issue, the record does not show that such an objection was ever made.

limitations issue and to submit it for adjudication to the trial court. In view of these circumstances, we hold that the limitations issue, though neither expressly pleaded nor included in the pretrial order by either party, was tried with the express consent of the parties. Fed.R.Civ.P. 15(b); *Wallin v. Fuller,* 476 F.2d 1204, 1209–10 (5th Cir. 1973).

■ Emmons's next contention concerns the manner in which the trial court disposed of the limitations issue. Because Southern Pacific moved for a directed verdict, Emmons argues that the trial court, in ruling on the motion, should have applied the *Boeing* standard. *Boeing v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969). This argument, however, overlooks the parties' agreement to submit the limitations issue to the trial court for adjudication. Although the court disposed of the issue through the vehicle of a motion for directed verdict, the issue was actually tried to the court as fact finder, and it made, in effect, findings of fact and conclusions of law thereon.[7] The *Boeing* standard was therefore inapplicable.

## IV.

### THE MERITS

Emmons's final contention concerns the trial court's disposition of the limitations issue on the merits. Emmons argues (1) that the trial court failed to apply the correct rule of law to determine when his cause of action accrued; (2) that there is insufficient evidence to support the trial court's finding that his cause of action was barred by limitations; and (3) that the trial court abused its discretion in failing to consider evidence discovered after the limitations issue was submitted to the court which tended to show that Emmons was confused about the date when he first realized that his ankle problem was work related.

### A. Accrual of the Cause of Action.

■ Where a claimant has no reason to know of his injury when it is sustained, his cause of action under the FELA does not accrue, and limitations therefore does not begin to run, until the claimant becomes aware that he has been injured and that his injury is work related. *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

■ The trial court, relying on *Urie,* ruled that Emmons failed to prove that he first became aware of his injury after November 1, 1975. The court added that "the

---

**7.** The court did not rule there was *no* evidence that Emmons's suit was brought within the limitations period or that Emmons did not know he had a work-related injury until sometime after November 1, 1975. Indeed, the court specifically rejected Southern Pacific's contention that "the October, 1974 visit to Dr. Haddad [as to which the court previously noted that plaintiff 'testified that he knew that the problem prompting him to see the doctor in October, 1974 was work related'] *conclusively* proves plaintiff knew about the injury to his ankle prior to November of 1975" (emphasis added), noting that there was "contradicting evidence on this point," and subsequently adverting to other "categorical" testimony of Emmons "that he did not believe that his ankle problems were work related until 1976." The court characterized Emmons's overall testimony in this regard as "contradictory and confusing," observed that Emmons had the burden of proof to show his suit was timely, and went on to state: "Considering plaintiff's contradictory statements and his keen interest in the outcome of this litigation, we find that the evidence is not of such character or quality on which we should base a finding that plaintiff has sustained his burden" and that "the evidence strongly suggests plaintiff had such awareness [of his injury] prior to November 1, 1975." Plainly the court was consciously acting as a fact finder, weighing conflicting testimony, making credibility determinations, and ultimately concluding that it was not persuaded by Emmons's evidence.

As heretofore observed, *see* notes 4 and 5, *supra,* and accompanying text, the parties agreed that the issue of limitations would be decided by the court, as trier of fact. Moreover, the memorandum submitted by Emmons's counsel to the trial court following the agreement referenced in note 5, *supra,* states, with respect to the limitations issue being considered, that: "[a]n agreement was made that the Court would determine this *factual issue* rather than the jury" and that "the Court has before it a *factual* determination" (emphasis added). Emmons cannot now contend that only the jury could resolve any factual disputes concerning limitations.

evidence strongly suggests plaintiff had such awareness prior to November 1, 1975."[8] The court rejected Emmons's argument that Southern Pacific's negligence continued past that date, because it was undisputed that Southern Pacific had no knowledge of Emmons's ankle problem until the hearing before its employment committee on August 12, 1977.

Emmons challenges the trial court's ruling and its findings by arguing that his cause of action did not accrue until he was fired on August 12, 1977 (actually August 24, 1977), or alternatively, until August 25, 1977, when for the first time he was furnished with a physician's diagnosis (by Dr. Saer) that his ankle problem was work related.

We understand Emmons's first argument to be based on the theory that Southern Pacific failed to provide him with a safe place to work because it negligently assigned him to work as a brakeman and that its negligence continued until he was relieved of that assignment on August 24, 1977.

The issue of Southern Pacific's negligence was submitted to the jury on two grounds: first, that Southern Pacific was negligent in failing to give Emmons a prepromotion physical; and second, that it was negligent in allowing Emmons's assignment as a brakeman to continue when it knew or should have known that Emmons's preexisting polio condition would worsen. A third ground, which was raised in the pleadings, that Southern Pacific was negligent in failing to require Emmons to undergo periodic physical examinations, was not submitted to the jury.

■ The evidence supports the jury's finding that Southern Pacific was negligent in failing to give Emmons a prepromotion physical. This single act, however, is not a continuing tort. It occurred without the limitations period. As to the second ground, there is no evidence that Southern Pacific knew or should have known that Emmons's work as a brakeman caused or would have caused his preexisting condition to worsen.

Emmons relies primarily on *Fowkes v. Pennsylvania Railroad Company,* 264 F.2d 397 (3d Cir.1959). In that case, Fowkes's traumatic arthritis was induced by a series of jolting impacts caused by a defective air hammer which he used from 1924 until 1952. Although Fowkes complained to his employer about the defective air hammer, the employer did nothing, and Fowkes continued to endure the jolts until 1952, when

---

8. Although the trial court, in its opinion, does not expressly state that a claimant must realize that his injury, once it has manifested itself, is work related, it is obvious, from the trial court's reliance on *Urie* and from its citation of Emmons's testimony that he realized in 1974 that his injury was work related, and from the trial briefs of counsel on this issue, that the trial court applied the correct standard in determining that Emmons's cause of action was barred. The trial court expressly noted that Emmons "testified that *he knew* that *the problem* prompting him to see the doctor [Haddad] *in October 1974 was work related,"* and also that "[p]laintiff further testified that at his employment hearing, held *August 12, 1977,* that he told Mr. Conners, his supervisor, that his *foot* had been bothering him *for two years and that this instability was because of his job."* (Emphasis added.) The court specifically rejected the argument that Emmons was confused in his testimony respecting the October 1974 visit to Dr. Haddad, stating, "Plaintiff's counsel, if such confusion were the case, had ample opportunity to question plaintiff to clari-

fy the matter, if he could, but failed to do so." On the other hand, the court observed that "plaintiff categorically testified that he did not believe that his ankle problems were work related until 1976." The court also noted in this regard that Emmons's testimony was "contradictory and confusing." It is clear to us that the trial court specifically focused on when Emmons became aware that his injury was work related.

There is, moreover, no contention in Emmons's brief, nor was there any such contention advanced by him at oral argument before this Court, despite a question specifically in this regard from the bench, that the trial court erred in not explicitly finding when Emmons was first aware the injury was work related. Instead, Emmons contends that the trial court erred in failing to find that Southern Pacific's negligence was continuing, or alternatively, that the court should have used the standard set forth in *Aerojet-General Shipyards, Inc. v. O'Keeffe,* 413 F.2d 793 (5th Cir.1969), that the injury must manifest itself to a physician before limitations begins to run.

his employer gave him a new assignment. The Third Circuit held that limitations did not begin to run against Fowkes until he was given a new assignment and thus was relieved of the "jolting" work.

In the instant case, Emmons never applied for a transfer to a different job,[9] nor did he tell any Southern Pacific official that his ankle problem was caused by his work until just before he was fired. As the trial court stated, "Without such knowledge on the part of [Southern Pacific] there can be no continuing tort."

In *Fletcher v. Union Pacific Railroad Co.*, 621 F.2d 902 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981), the Eighth Circuit held in a FELA case that the claimant's suit against his employer for negligently assigning him to a job more strenuous than that for which he was reasonably suited was not barred by limitations inasmuch as the negligence did not cease until the employer assigned him to do lighter work. There, however, the employer continued to assign the claimant to heavy labor even though a physician had recommended to it otherwise and after the claimant had sought to be transferred to a different job. 621 F.2d at 905, 908.

■ While it is undisputed that Southern Pacific's assignment of Emmons as a brakeman continued until his termination, there is no evidence that Southern Pacific was aware of Emmons's ankle problem until just before he was fired. Although there is some evidence that Emmons inquired about the possibility of a transfer with a Southern Pacific official, Emmons did not seriously pursue it or make an application, nor, more importantly, did he tell the official that the reason for seeking a transfer was that his duties as a brakeman were aggravating his ankle problem. We hold therefore that there is insufficient evidence of negligence on the part of Southern Pacific in this regard.

Accordingly, the only negligence shown on the part of Southern Pacific occurred without the period of limitations.

Emmons's alternate argument is that limitations did not begin to run against him until he received a professional diagnosis (by Dr. Saer) on August 25, 1977, that his ankle problem was work related. Emmons relies primarily on *Aerojet-General Shipyards, Inc. v. O'Keeffe*, 413 F.2d 793 (5th Cir.1969). In that case, O'Keeffe, a sandblaster, sued his employer for injuries under the Longshoremen's and Harbor Workers' Compensation Act. O'Keeffe had suffered breathing problems and arthritic pain since 1964. In 1966, he was diagnosed by a physician as suffering from rheumatoid arthritis and chronic pulmonary fibrosis, which was caused or aggravated by his prolonged exposure to sandblasting work. O'Keeffe had suspected that his symptoms were work related since 1964, but his self-diagnosis was expressly rejected by several physicians, who concluded that his problems were not work related.

This Court held that the limitations period began to run against O'Keeffe when his symptoms were diagnosed as work related by his physician in 1966.

> "The limitations period for occupational diseases begins to run when the employee knows, or reasonably should know, that his condition is a disease which arose out of his employment. [Citations omitted.] The *Cardillo* [*Traveler's Insurance Co. v. Cardillo*] case holds that a claim for occupational disease accrues only when the 'cumulative effects of the exposure manifest themselves'. 255 F.2d [137] at 142 [2nd Cir.]. The effects must manifest themselves to a physician rather than to an unschooled employee before limitations begin to run.[4] This analysis effectuates the policy that the Act is to be liberally construed in a way which avoids

---

**9.** Emmons testified at trial that he asked a Southern Pacific supervisor, Mr. Conners, about transferring back to his clerical job. He added, however, that he did not give Mr. Con-

ners the reason for wanting the transfer. There is also no evidence that Emmons ever made an application for a transfer.

harsh and incongruous results." 413 F.2d at 795–96.

In footnote 4, the Court added:

"The Supreme Court has never precisely ruled on this point in cases involving the Harbor Workers' and Longshoremen's Act. The Court has noted that there is a less rigid standard applied in determining when limitations begin to run for occupational diseases as compared to determining when limitations start for subsequent manifestations of latent effects of one injury. [Citation omitted.]

"The Court has rejected 'mechanical analysis' of a similar limitation provision in the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). The Court considered occupational disease cases as a special category and noted that the statute of limitations could only begin to run when the employee has definite knowledge that his injury or disease is work-related. [Citation omitted.]" 413 F.2d at 796 n. 4.

■ Although at first glance, *O'Keeffe* may appear to control this case, it is properly distinguished. In *O'Keeffe,* the claimant's self-diagnosis was expressly rejected by several physicians, who told him that his problems were not work related. The claimant knew that his symptoms were truly work related only after being so advised by a physician a few years later. In the instant case, however, Emmons clearly testified that he knew his ankle problem was work related in 1974, after his ankle was examined by Dr. Haddad, and there is no evidence that any other physician ever told him otherwise. Moreover, the type of problem Emmons was having with his ankle was not shown to be a true occupational disease as was the case in *O'Keeffe,* but rather was

shown to be an aggravation (through repeated trauma) of a preexisting condition caused by a disease contracted when Emmons was a child. Here we are dealing neither with a "should have known" contention, nor with a situation where the claimant has received misleading medical diagnoses or been otherwise misled or put in doubt; nor with a true occupational disease. In such circumstances, we think it sufficient for purposes of commencement of the limitations period that the plaintiff knew his complained of condition was work related, and that it is not additionally necessary that he have been formally so advised by a physician.[10]

Emmons's reliance on *Young v. Clinchfield Railroad Company,* 288 F.2d 499 (4th Cir.1961), is also misplaced. There the claimant, who had a number of ailments, some of which were not work related, and who was advised by a physician on at least one occasion that the lung condition for which he brought suit was not work related, did not know that the lung condition was work related until it was later so diagnosed by a physician.

**B. The Sufficiency of the Evidence.**

■ Emmons's next argument is that there is insufficient evidence to support the trial court's finding that his cause of action was barred by limitations. We disagree.

On direct examination, Emmons testified that toward the end of 1975, he began having trouble with his ankle. He also testified that he saw Dr. Haddad between 1975 and 1977, and that he told the doctor that he was having a problem with his ankle. On cross-examination, Emmons testified that he saw Dr. Haddad in the summer of 1975 about his ankle, but that he did not tell

---

**10.** See the following from *Sun Shipbuilding & Dry Dock Co. v. Bowman,* 507 F.2d 146, 149–50 (3d Cir.1975):

"In *Aerojet-General [Aerojet-General Shipyards, Inc. v. O'Keeffe, supra],* the claimant had previously been dissuaded from filing a claim by erroneous medical advice that his ailment was not work-related, and thus it was perfectly understandable that the court ruled that the limitations period did not begin

to run until the claimant received correct advice from a doctor. *Aerojet-General* did not hold, however, that in the absence of prior erroneous medical advice, as was the case here, a correct medical diagnosis is necessary to determine the date from which the limitations period begins to run."

*See also Sun Shipbuilding & Dry Dock Co. v. McCabe,* 593 F.2d 234, 238 (3d Cir.1979).

anyone in authority at Southern Pacific about this visit. Emmons added that this was the only time he saw a physician about his ankle between his preemployment physical in 1972 and August 1977. He further testified that he did not know what was causing his trouble, but that he thought it might be a loose pin in his foot. Emmons was then asked:

"Q Did there come a point where you started to really believe that doing [brakeman]-switchman work was causing the problems with your ankle?

"A Yes, sir.

"Q When did you begin to believe that?

"A In '76.

"Q What part of '76?

"A I am not really sure of the exact date or anything.

"Q Was it the summer?

"A I am not really sure. It was in '76.

"Q So in '76 you began to believe that the work was giving you trouble?

"A Yes, sir.

"Q But you didn't go to see any doctors?

"A No, sir.

"Q And you didn't talk to anybody in authority in the company about it?

"A I was afraid I would be fired if I would."

Dr. Saer testified that according to his office records, Emmons was seen in 1974 by his partner, Dr. Haddad.[11] After Emmons rested his case, he was recalled to the stand by Southern Pacific. At that point the following exchange occurred:

"Q Mr. Emmons, yesterday you testified you went to see Dr. Haddad who is with Dr. Sear's [sic] office sometime in 1975.

"A Yes, sir.

"Q You testified that that was the only occasion on which you went to see a physician during the time that you worked for the railroad after taking a pre-employment physical, do you recall that?

"A Correct.

"Q You were in the court room yesterday when you heard Dr. Sear state that his office records reflected you had seen Dr. Haddad in 1974. *Did that refresh your recollection as to when you had actually gone to see Dr. Haddad?*

"A Yes, sir. I would have to go by what he said. *I wasn't sure of the year, like I said.*

"Q You have no independent recollection of the year?

"A I have no records of when I went to see him, but I suppose it was '74. I thought it was '75. From what he said, I gathered it was '74.

"Q *You now believe '74 to be the correct year?*

"A *Yes, sir.*

"Q What was the reason for going to see him again?

"A I was having trouble with my ankle.

"Q *After the examination by Dr. Haddad in 1974, was it your feeling at that point that the problem with your right ankle was associated with your employment?*

"A *Yes, sir.*

"Q *That was in 1974?*

"A *Yes, sir.*

"Q You heard Mrs. Emmons testify today that she thought you had gone to Dr. Sear's office on several occasions while you were working.

"A Yes, sir, I did.

"Q She was mistaken on that, wasn't she? You only went there one time?

"A Yes, she was.

"MR. SCHULTZ: Thank you. No further questions.

"MR. RECK [Emmons's counsel]: *I have no questions.*" [Emphasis added.]

---

11. Dr. Saer's testimony was based on all of the records of Emmons's office visits over the past few years.

In view of this testimony, we hold that the trial court's finding that Emmons's cause of action was barred by limitations is not clearly erroneous. Fed.R.Civ.P. 52(a). *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Unlike Emmons's earlier testimony which was equivocal, qualified, and finally renounced, this testimony plainly shows that in October 1974, Emmons associated his ankle problem with his work. The trial court's finding is also supported by Dr. Saer's testimony, and by that of Emmons's co-worker, Ralph Nielson, who testified that Emmons complained to him in the latter part of 1974 of pain in his ankle.[12]

## C. Abuse of Discretion.

 Emmons's final argument is that the trial court abused its discretion in failing to consider Dr. Haddad's notes of the 1974 examination, which revealed that he had seen Emmons for an ankle injury sustained while playing ball. After receiving the jury's verdict, Emmons was given an opportunity to offer additional evidence on the limitations question. His attorney, however, declined the court's offer and agreed that no further evidence was needed. Emmons therefore chose to forego his opportunity to clear up any confusion respecting the date when he first realized that his ankle problem was work related. Although Emmons's attorney may not have actually been aware of Dr. Haddad's notes until after he had declined to produce any further evidence, he made no motion that

the court consider this matter, but merely attached purported copies of Dr. Haddad's notes to his brief submitted after the agreement referenced in note 5, *supra*.[13] Counsel for Southern Pacific was not given an opportunity to examine and to discredit this new matter. Furthermore, after the trial court rendered its judgment on the limitations issue, Emmons's attorney made no motion for new trial under Fed.R.Civ.P. 59 or for relief from judgment under Fed.R. Civ.P. 60(b)(2). Under these circumstances, we hold that the trial court did not abuse its discretion in refusing to consider Dr. Haddad's notes.

The trial court's judgment is affirmed.

AFFIRMED.

---

12. Nielson testified that he did not tell a Southern Pacific supervisor about Emmons's ankle problem. He further testified that he had known Emmons since childhood and that he had never heard Emmons make such complaints about his ankle until the latter part of 1974. After that time, he testified that Emmons's complaints of pain increased in frequency.

Further, Emmons testified that in August 1977 he told his supervisor, in effect, that for two years his foot had been bothering him because of recurring injuries in the work he was doing.

13. No motion to reopen the evidence was made. In Emmons's referenced brief to the trial court, to which the purported copies of the medical records were attached, it is stated that

"the medical reports attached herewith are not submitted with respect to the factual determination [respecting limitations] that the Court has to make concerning the evidence submitted at trial," although it is stated that these records are corroborative of Emmons's confusion in his trial testimony, which confusion is also stated to be reflected by the trial transcript. No request to reopen the evidence is contained in this brief. This brief offers no explanation why these documents were not sooner tendered.

We also observe that what is shown by these purported copies of medical records is not necessarily inconsistent with Emmons's testimony that in 1974, following his visit to Dr. Haddad, he realized that the problem with his right ankle was work related.