# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00389-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY*

*v.*

*MILTON McDANIEL AND BETTYE C.
McWILLIAMS, EXECUTRIX OF THE ESTATE OF
LARRY McWILLIAMS, DECEASED*

*AND*

*KELLY C. ROBINSON v. ILLINOIS CENTRAL
RAILROAD COMPANY*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2004 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LONNIE D. BAILEY |
| | GLENN F. BECKHAM |
| | EDWARD BLACKMON, JR. |
| | THOMAS R. PETERS |
| ATTORNEYS FOR APPELLEES: | THOMAS W. BROCK |
| | WILLIAM S. GUY |
| | WAYNE DOWDY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/31/2006 |
| MOTION FOR REHEARING FILED: | 07/20/2006 |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied.  The original opinion is withdrawn, and this opinion

is substituted therefor.

¶2. Plaintiffs filed suit against Illinois Central Railroad Company (ICRR) in the Circuit Court of Jefferson County under the case name ***Robert Allen, et al v. Illinois Cent. R.R. Co.***, and pursuant to then existing Mississippi law regarding joinder and venue. Plaintiffs asserted their claims for asbestos related personal injuries under the Federal Employers Liability Act (FELA). 45 U.S.C. §§ 51-60 (1939). Prior to the commencement of trial in the matter, ICRR entered into a contingent settlement agreement with the remaining plaintiffs. Plaintiffs' counsel filed two separate motions with the circuit court to enforce the settlement agreement on behalf of a small number of the remaining plaintiffs, more than two years after the contingent settlement was agreed upon. After several hearings, the circuit court granted, in part, and denied, in part the plaintiffs' motion to enforce the settlement agreement, and overruled ICRR's motion to dismiss, and to compel production, to allow further investigation and discovery, and for findings and conclusions of law. ICRR, feeling aggrieved, appealed to this Court regarding the enforcement of the settlement between ICRR and plaintiffs Milton McDaniel (McDaniel) and Larry McWilliams (McWilliams). In addition, plaintiffs' counsel filed a cross-appeal, on behalf of plaintiff Kelly Robinson (Robinson), pertaining to Robinson's dismissal for not conforming to the applicable statute of limitations.

¶3. Finding no error, we affirm the findings of the circuit court.

## FACTS

¶4. On June 19, 2001, counsel for ICRR sent a letter to plaintiffs' counsel stipulating the payment to thirteen specifically named plaintiffs in the cause of ***Robert Allen, et al v. Illinois Cent. R.R. Co.*** The letter also set forth a contingent payment procedure detailing the payment of negotiated amounts to the remainder of the plaintiffs involved in ***Robert Allen, et al v.***

2

*Illinois Cent. R.R. Co.* Pursuant to the agreed upon payment procedure, ICRR would not tender payment for any remaining plaintiffs' claims without receiving certain documentation from each individual plaintiff, including: a pulmonary questionnaire, authorizations, and medical documentation establishing the claimed disease process. Also, ICRR reserved the right to assert three defenses to payment under the conditional settlement agreement including a statute of limitations defense, evidence of a prior release, or if the plaintiff was never in the employment of ICRR. As both ICRR and the plaintiffs assert, numerous claims were settled in accordance with the established procedure.

¶5. In September 2003, and again in January 2004, after ICRR suspended settlement payments, the plaintiffs filed motions with the Circuit Court of Jefferson County prompting the circuit court to enforce the settlement agreement. ICRR would eventually oppose any further enforcement of the settlement due to alleged irregularities in the documentation of certain claims by way of its motion to dismiss certain claims in the case. The circuit court then entertained four separate hearings pertaining to issues raised in connection with these motions.

¶6. At the first two motion hearings, the circuit court reopened discovery and directed both parties to file briefs in anticipation of a final hearing on the settlement issues. At the succeeding motion hearing, the circuit court denied ICRR's motion to dismiss and granted the plaintiffs' motion to enforce the settlement agreement. Specifically, regarding the individual plaintiffs currently on appeal, the circuit court found that releases signed by plaintiffs McDaniel and McWilliams did not bar them from participation in the settlement agreement. The circuit court also considered the claim of Robinson, and determined Robinson's cause of

3

action was barred by the applicable statute of limitations. ICRR subsequently motioned the circuit court to reconsider its findings based on newly discovered evidence, to withhold entry of final judgment to allow further investigation, and for findings of fact and conclusions of law. The circuit court denied ICRR's motions in a final hearing on the issues, and ICRR perfected the present appeal with this Court regarding McDaniel and McWilliams. Plaintiffs perfected a cross-appeal with this Court regarding the circuit court's findings pertaining to the dismissal of Robinson from the action. After full consideration of the issues, we find no error by the trial court and accordingly affirm.

## ANALYSIS

¶7. We have decreed on numerous occasions "[t]his court will not disturb the findings of the chancellor unless it is shown the chancellor was clearly erroneous and the chancellor abused his discretion." *Howard v. Totalfina E & P USA, Inc.*, 899 So. 2d 882, 888 (Miss. 2005) (citing *Hill v. Southeastern Floor Covering Co., Inc.*, 596 So. 2d 874, 877 (Miss. 1992); *Bell v. Parker*, 563 So. 2d 594, 597 (Miss. 1990)). Also, "a circuit judge sitting without a jury is accorded the same deference with regard to [] factual findings as is a chancellor." *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989) (citing *Hardy v. First Nat'l Bank of Vicksburg*, 505 So. 2d 1021, 1023 (Miss. 1987)). "Abuse of discretion is found when the reviewing court has a 'definite and firm conviction' that the court below committed a clear error of judgment and the conclusion it reached upon a weighing of the relevant factors." *Howard*, 899 So. 2d at 888 (citing *Caracci v. Int'l Paper Co.*, 699 So. 2d 546, 556 (Miss. 1997)).

4

## I. MOTION TO ENFORCE SETTLEMENT AGREEMENT

¶8. ICRR asserts the circuit court committed reversible error by granting the plaintiffs' motion to enforce the settlement agreement and ordering ICRR to pay the requisite settlement amounts, in light of false affidavits submitted to ICRR by the plaintiffs. On appeal ICRR argues, specifically, both McDaniel and McWilliams provided false, sworn affidavits in an attempt to distill settlement funds from ICRR. McDaniel and McWilliams dismiss ICRR's claims as an attempt to distort innocuous details into facts constituting reversible error.

¶9. ICRR alleges it began to grow curious and concerned about the contingent settlement procedure sometime after it was agreed upon by the parties. ICRR asserts its concerns were piqued after it became aware of incongruities involving plaintiff Fred Tyler (Tyler) in a similar contingent settlement agreement.[1] During its investigation, ICRR discovered Tyler's participation in a previous, 1996 Jefferson County, asbestos case.[2] ICRR then learned Tyler was diagnosed with an asbestos related disease more than three years before filing suit against ICRR, thus allowing for a statute of limitations defense as set forth in the settlement agreement. According to ICRR, "Tyler's non-disclosure of his participation and settlements received in the *Cosey* case raised a red flag for ICRR." In response to ICRR's concerns in this case, counsel for the plaintiffs sent a letter to ICRR wherein the plaintiffs agreed to provide

---

[1]*Eakins v. Illinois Cent. R.R. Co.*, Civil Action No. 2001-65 (Cir. Ct. of Jefferson County).

[2]*Cosey v. E.D. Bullard Company*, Civil Action No. 2001-65 (Cir. Ct. of Jefferson County) (eventually removed to U.S.D.C., No. 99-CV-164 (S.D. Miss.)).

an affidavit from each remaining plaintiff regarding all prior asbestos litigation.[3]   This letter

provided in pertinent part:

> With regard to the Tyler matter, we have spoken to Mr. Tyler.  It is apparent that when Mr. Tyler was questioned about prior litigation, he understood that he was being asked about a prior case against the railroad.  Also, the questionnaire that he signed states "Yes" as the response to the question about prior litigation against asbestos manufacturers.
>
> To make sure that this situation does not occur again, we will be supplying affidavits from all remaining unpaid *Allen* and *Eakins* plaintiffs regarding all prior asbestos litigation.  If a plaintiff has been involved in prior litigation, we will provide you with any document that we can obtain for your review.

¶10.   In accordance with the letter, the plaintiffs produced fifty-eight affidavits disclosing other asbestos litigation, and after an investigation of its own accord, ICRR determined fifty-six of the plaintiffs' affidavits were false.   Specifically, ICRR claims McDaniel and McWilliams excluded information from their affidavits regarding their status as named plaintiffs in separate and additional asbestos cases.  McDaniel's affidavit states:

> I have never been a plaintiff or a claimant in any asbestos suit other than *Allen v. ICRR*, No. 2000-100, in the Circuit Court of Jefferson County, Mississippi and *Alderson v. Garlock, Inc., et al*, No. 2002-124-CV3, in the Circuit Court of Jones County, Mississippi, Second Judicial District.

ICRR points out this affidavit fails to mention McDaniel's participation as a plaintiff in *McNeil v. Dresser Industries, Inc.*, 2002-283-CV9.

¶11.   Betty McWilliams, executrix of the estate of Larry McWilliams, submitted the affidavit ICRR takes issue with; it states:

---

[3]The first page of the facsimile letter dates the document April 22, **2002**; however this is apparently a mistake as the second page of the document sets the date correctly as April 22, **2004**.

Larry L. McWilliams has never been a plaintiff or a claimant in any asbestos suit other than *Allen v. ICRR*, No. 2000-100, in the Circuit Court of Jefferson County, MS and *Moore v. Garlock, Inc. et al*, No. 2002-470, in the Circuit Court of Smith County, MS.

ICRR points out this affidavit fails to mention McWilliams' participation as a plaintiff in *McNeil*, and *Acuff v. American Optical Corporation*, 2003-159-CV8.

¶12. ICRR insists the plaintiffs' omissions of *McNeil* and *Acuff* from, not only the McDaniel and McWilliams affidavits, but also from twenty-nine additional affidavits, constituted an egregious and pervasive pattern of deception. Conversely, plaintiffs' counsel claim an unintentional mistake due to their own oversight resulted in the harmless absence of *McNeil* and *Acuff* from the affidavits. Plaintiffs point out both *McNeil* and *Acuff* were filed after the case at bar. Plaintiffs contend they therefore conformed to the procedure set forth in their letter, whereby they voluntarily agreed to furnish affidavits concerning only prior asbestos litigation, see supra.

¶13. The circuit court heard virtually identical arguments from both parties in open court. During the hearing the circuit court stated:

> I think this case will turn on what your supplemental agreement says. If the plaintiffs were only to disclose prior, and I emphasize "prior" participation in asbestos litigation, then I believe that the court should disregard this argument and allow them to recover provided they have complied with all other aspects of the settlement agreement. If it says to disclose all participation in asbestos litigation, both past and present, then that may be another situation, and I need to determine whether this is such bad faith of a material breach of the agreement that it warrants dismissal of the plaintiffs. I need to know what the supplemental agreement says.

The circuit court thereafter allowed both parties to argue their positions on omission of *McNeil* and *Acuff* from certain affidavits. The circuit court then made its findings on the record, and those findings, in pertinent part, were as follows:

> I believe you, counsel, that these things were omitted by inadvertence. I will suggest to you that when you're dealing with something that's - - I mean, if we were talking about a simple letter, you inadvertently left something out of a letter to the Illinois Central or something to that effect, that's one thing, but when you're signing an affidavit or having people sign affidavits, if they're swearing to things that are inadvertently wrong, that can have serious consequences. I mean, an affidavit is something that you need to make sure is correct before you allow the plaintiffs or whoever to sign it. In any event, the errors have been discovered. I don't think there's any prejudice.

The circuit court then denied ICRR's motion to dismiss and granted the plaintiffs' motion to enforce the settlement agreement.

¶14. This Court agrees with the circuit court that the absence of *McNeil* and *Acuff* in the affidavits at issue was inadvertent, not willful and intentional as ICRR insists. Therefore, the circuit court did not abuse its discretion.

¶15. In addition, we remind the attorneys of this State that they should be very careful when signing, or having a client sign, a sworn statement such as an affidavit. Although sanctions were not deemed appropriate by the circuit court in this case, all attorneys should nonetheless heed the circuit court's warning that swearing to false or incorrect statements could result in a myriad of dire consequences. The process of simply reading and verifying what is being signed operates as a seine for filtering out potential drastic errors caused by a factually incorrect sworn statement. Thus, this Court finds that such a preemptive warning, or admonition, offered to the legal community by this Court will operate as a preventive measure, to combat future affidavit inconsistencies. Nevertheless, this issue is without merit.

8

## II. MOTION TO RECONSIDER

¶16. Subsequent to the circuit court's grant of the plaintiffs' motion to enforce the settlement agreement ICRR filed its motion to reconsider the ruling, to compel production, for further discovery and investigation, and for findings of fact and conclusions of law. The circuit court heard ICRR's motion to reconsider its previous findings in open court. ICRR argued at the hearing that the circuit court abused its discretion when it failed to reconsider its findings in light of newly discovered evidence.[4] Further, ICRR asserted the circuit court committed additional error by refusing to compel production of documents, refusing to allow discovery, and refusing a request for the court's findings of fact and conclusions of law pursuant to M.R.C.P. 52(a).

¶17. After hearing arguments on the motion by both parties, the circuit court denied ICRR's motion to reconsider. Today, on appeal, ICRR presents this Court with virtually identical arguments as it presented to the circuit court. ICRR claims the circuit court abused its discretion by denying the motion to reconsider.

¶18. ICRR initially raised the issue of newly discovered evidence at the motion hearing. The majority of ICRR's argument on newly discovered evidence consisted of a rehash of ICRR's previous arguments regarding the absence of *McNeil* and *Acuff* from the plaintiffs' affidavits. In response the circuit court echoed its findings from the previous hearing, see supra, by stating:

---

[4]ICRR claims to have new evidence that the plaintiffs were aware of *McNeil* and *Acuff* at the time they signed the affidavits at issue. ICRR insists two documents pertaining to *McNeil*'s current status in bankruptcy proceedings conclusively prove plaintiffs' counsel did not inadvertently omit *McNeil* and *Acuff* at the time the affidavits were drafted.

I believe that there was no intent to defraud from what I've heard so far. It appears to me that there was a mistake made, and it was bad wording of your document that there was a mistake made and that the affidavit should have been worded differently, and I believe that. And I also believe that both you and your client should be more careful before they sign affidavits and anything of that nature under oath. I think that certainly they should be more careful and you should be more careful in instructing your clients. I will say that without hesitation; however, I don't see that there's any intent to defraud. From what I have before me at this point, I don't see any intent to defraud.

¶19. ICRR then requested the circuit court to compel production of documents regarding an addendum to a contract of employment between the plaintiffs and their attorneys. Regarding this request, the circuit court declared:

Well, counsel [for ICRR], and I would grant that if there were something that you gain from the information that you're requesting. First, of all you need to understand the information that you're requesting is privileged.

. . .

I would order that that privilege be - - that you produce the documents and things of that nature under exceptional circumstances, and if I felt that the information that you could obtain from reading these documents would show me that the language of this affidavit was intentional and that the folks intended to defraud you rather than a mistake in the drafting of the document by the attorney, then I might consider that, but I don't see any way it could possibly do that, so I'm not going to allow you to get those things.

¶20. At the conclusion of the hearing, the circuit court pointed out *McNeil* and *Acuff* were filed after the case at bar, thus there was no statute of limitations defense that could be raised, and ICRR agreed. Moreover, the circuit court did not find that any of ICRR's requests would lead to proof of its allegations. The circuit court ultimately denied ICRR's motion to reconsider its ruling regarding ICRR's motion to dismiss, and to compel production, to allow further investigation and discovery, and for findings and conclusions of law.

10

¶21.   It is clear to this Court that the circuit court gave ICRR's motion for reconsideration due consideration.   Furthermore, although this Court prefers trial courts to make separate particularized findings of fact and conclusions of law, general findings of fact and conclusions of law do not require reversal, and they technically conform to the requirements of M.R.C.P. 52. *Century 21 Deep South Props. Ltd. v. Corson*, 612 So. 2d 359, 366-67 (Miss. 1992).   In this case, the circuit court made several findings on the record regarding its decision to deny ICRR's motion.   Moreover, these findings are sufficiently situated as to allow this Court to make its own findings.   In accordance with the circuit court's on-the-record findings, we find the circuit court did not abuse its discretion when it denied ICRR's motion.   Thus, this issue is without merit.

### III. RELEASES

¶22.   ICRR now alleges it need not tender payment to either McDaniel or McWilliams because both previously released their asbestos claims against ICRR.[5]   Specifically, ICRR insists McDaniel personally released his claim by signing an occupational injury release, thereby releasing all personal injury claims he had against ICRR.   Also, ICCR maintains McWilliams released his claim because his claim has already been settled pursuant to the settlement agreement.

#### *McDaniel*

¶23.   In 1998, while employed by ICRR, McDaniel suffered a career ending back injury when he attempted to set a defective hand brake.   Due to the injury he suffered, McDaniel sent his

---

[5] The contingent settlement procedure provided three defenses to payment for ICRR, see supra, and one of those defenses was a release of claim.

demands to ICRR's claims department. As evinced by ICRR memoranda, McDaniel and ICRR subsequently settled his claim for the back injury suffered. As part of the back injury settlement, McDaniel signed a document titled Final Settlement Release and Agreement Not to Return to Work. The language of this document released ICRR for a number of ailments, including exposure to asbestos, see infra. Although he was x-rayed approximately one month prior to signing the release, McDaniel's x-ray was not read until several months after the release was signed. Thus, McDaniel contends that at the time he signed the release at issue, he was not aware of his potential claim against ICRR for asbestos related injuries. Moreover, McDaniel maintains the release was ineffective as to his claim in this case.

¶24. Just as with every plaintiffs' claim in this case, McDaniel's claim was filed under FELA. Therefore, this Court must determine whether § 5 of FELA applies to McDaniel's claim because § 5 of FELA limits ICRR's ability to fully exempt itself from liability. Section 5 of FELA states in pertinent part "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void. . . ." 45 U.S.C. § 55. The issue of release presently before this Court has previously been considered in two different federal circuits.

¶25. First, in *Babbitt v. Norfolk & Western Ry. Co.*, 104 F.3d 89 (6th Cir. 1997), the United States Court of Appeals, Sixth Circuit, considered a general release issue in regard to employee FELA claims against a railroad employer. In *Babbit*, the Court considered the claims of plaintiff-employees under FELA on the grounds the defendant-railroad was responsible for hearing loss during the course of their employment. At issue in *Babbitt* was

12

a general release signed by the plaintiffs upon resignation from the railroad. The Sixth Circuit determined:

> where there exists a dispute between an employer and employee with respect to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the Act. However, where the release was not executed as part of a specific settlement of FELA claims, 45 U.S.C. § 55 precludes the employer from claiming the release as a bar to liability. ***Philadelphia, Baltimore, & Washington R.R. Co. v. Schubert***, 224 U.S. 603, 612, 32 S. Ct. 589, 591-92, 56 L. Ed 911 (1912). **To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him.**

***Babbitt***, 104 F. 3d at 93 (emphasis added).

¶26.    In the case presently before this Court, the only known injury at the time McDaniel signed the release was the severe back injury he suffered as a result of a defective hand brake. Although McDaniel was x-rayed approximately one month prior to signing ICRR's release form, the x-ray was not read until several months after he signed the release. Furthermore, there is no evidence McDaniel was aware he may have a potential asbestos-related injury. Therefore, in accordance with the Sixth Circuit's view, the release McDaniel signed would not bar him from settlement.

¶27.    Similarly, in ***Wicker v. Consol. Rail Corp.***, 142 F.3d 690 (3d Cir. 1998), the United States Court of Appeals, Third Circuit, also considered the FELA claims of plaintiff-employees who were injured due to exposure to toxic chemicals during the course of their employment with defendant-railroad. However, ***Wicker*** failed to fully adopt the Sixth Circuit's rationale in ***Babbitt***. Instead of applying the Sixth Circuit's bright-line rule, ***Wicker*** noted "that what is involved is a very fact-intensive process, but trial courts are competent to make these

13

kinds of determinations." *Id*. at 701. Furthermore, *Wicker* provided "where a release merely details a laundry list of diseases or hazards, the employee may attack that release as boilerplate, not reflecting his or her intent." *Id*.

¶28. Hence, it is patently clear the Third Circuit strongly disfavors the use of "blanket releases" as applied in FELA claims. *Wicker* provided an example of what constitutes a sufficient release:

> a release that spells out the quantity, location and duration of potential risks to which the employee has been exposed-for example toxic exposure-allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violate § 5 of FELA.

*Id*. at 701. Accordingly, *Wicker* ultimately held:

> As noted, we hold that § 5 of FELA allows an employer to negotiate a release of claims with an employee provided the release is limited to those risks which are known by the parties at the time the release is negotiated. In the case before us, we find the releases signed by the parties violate § 5 because they purport to settle all claims regardless whether the parties knew of the potential risks.

*Id*. at 702.

¶29. The release McDaniel signed as a result of an on the job injury settlement, covered a vast and extensive spectrum of potential injuries which could potentially arise in McDaniel's future.[6] Also, included within the language of the document appears the following phrase:

---

[6]The following portion of the release at issue reads like a "laundry list" of potential claims from which ICRR sought exemption:

> . . . the undersigned does hereby fully, completely and forever release, discharge, and acquit Illinois Central Railroad Company. . . from any and all claims, losses, damages, injuries or diseases which are presently known to exist ans were or are directly or indirectly caused by or resulting from injuries which occurred on or about May 4, 1998, as well as any alleged exposure of the

14

THIS IS NOT A RECEIPT FOR WAGES - IT IS A GENERAL RELEASE. This further evinces that the release at issue was in fact the dreaded "laundry list" general release, disfavored by both *Babbitt* and *Wicker*. The language found in the McDaniel release is clearly an overbroad list of generic hazards, rather than the specific risks of asbestos McDaniel faced. Therefore, pursuant to the Third Circuit's school of thought McDaniel's release would not pass muster under § 5 of FELA.

¶30. Conversely, ICRR propounds the United States Supreme Court decision of *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 68 S. Ct. 296, 92 L. Ed. 242 (1948), is controlling authority. However, this Court does not agree due to numerous factual and legal dissimilarities between *Callen* and this case. *Callen* involved an instance where a plaintiff suffered a severe back injury during the course of his employment with the railroad. The plaintiff eventually filed suit against the railroad as a result of the injuries he sustained. Among its defenses to liability, the railroad claimed the plaintiff executed a valid release specifically pertaining to the plaintiff's claims arising out of the back injuries involved in the suit. *Callen*, 332 U.S. at 626-27. The release at issue in *Callen* arose out of the plaintiff's back injury and was

---

undersigned to asbestos, coal dust, sand, silica, welding fumes, brass fumes, diesel fumes, fuel fumes, paint vapors, methylbromide , ammonia, gas, lead, PCB, dioxin, or other toxic or noxious chemical exposure and all other fumes, dusts, mists, gases and vapors from any chemical or agent, injuries or diseases which are presently known to exist and were or are directly or indirectly caused by or resulting from the exposure of the undersigned to noise, including incidents or exposures which may have aggravated any pre-existing condition, as well as injuries to the upper extremities of my body including neck, shoulders, arms and wrists due to repetitive motion/strain and/or cumulative trauma - commonly known as Carpal Tunnel Syndrome, while the undersigned was in the employ or environment of the Illinois Central Railroad Company. . . .

15

specifically designed and executed for future litigation as a result of that back injury. *Id*. The facts in **Callen** present an issue where a release arose out of the specific injury alleged. Conversely, the McDaniel release initially arose out of McDaniel's back injury. However, ICRR asserts the release as a defense to payment for McDaniel's current asbestos related injuries because the broad verbiage of the release creates an anticipatory laundry list of possible injuries effectively throwing in everything but the kitchen sink. Therefore, **Callen** is clearly distinguishable from the case at bar.

¶31. After due consideration, this Court finds the holdings of the Sixth and Third Circuits are compelling authority as applied to this case. Further, after applying the holdings of both the Sixth and Third Circuits, we find McDaniel's release was ineffective under § 5 of FELA to preclude his claim against ICRR for asbestos related injuries; to hold otherwise would produce an unconscionable result. Therefore, the circuit court did not abuse its discretion in finding McDaniel's release ineffective in this case. Thus, McDaniel's claim should not be released.

### McWilliams

¶32. McWilliams, a former ICRR employee, entered into settlement negotiations with ICRR after being diagnosed with asbestosis. In accordance with the settlement agreement, McWilliams submitted the requisite supporting documentation regarding his illness, and ICRR agreed to payment. Prior to tendering payment, ICRR forwarded a release to McWilliams for his asbestos related injuries. McWilliams signed the release and returned a copy of it to ICRR along with a letter explicitly stating "[t]he enclosed copies are not effective until such time as payment set forth above has been made by ICRR." Further, the letter provided that ICRR would be sent the original copy of the release upon receipt of the settlement amount. However,

approximately one week later McWilliams sent an additional letter notifying ICRR he had been diagnosed with cancer and would be withdrawing his claim, for which he had not been paid.

¶33. ICRR argues McWilliams settled his asbestosis claim and effectively released ICRR from any future claim. This argument fails on several fronts. First, the letter McWilliams attached to the copy of the signed release clearly demonstrated the copies of the release would not be effective until ICRR made payment. Next, ICRR never tendered nor completed any settlement payment whatsoever regarding McWilliams' asbestosis injuries. Finally, the settlement agreement provided that "[p]rior to payment, any plaintiffs' diagnosis could change: i.e., a plaintiff with a current diagnosis of asbestosis or asbestos related pleural disease could develop a malignancy, or a plaintiff with asbestos related pleural disease could be diagnosed with asbestosis." The circuit court considered this very issue regarding McWilliams and determined:

> My ruling on that case is, if in fact the agreement between Illinois Central and the plaintiffs allowed him to change his type of claim upon a new diagnosis prior to his being paid, and he changed his diagnosis prior to being paid, it falls within that section; and you need to look at the new diagnosis.

¶34. Pursuant to the settlement agreement between the parties, McWilliams was allowed to change his type of claim because he notified ICRR of his change of diagnosis prior to payment. Therefore, the circuit court did not abuse its discretion in its findings. This issue is without merit.

## IV. CROSS-APPELLANT KELLY ROBINSON – STATUTE OF LIMITATIONS

¶35. On cross-appeal, Robinson argues the circuit court erred in finding the applicable FELA statute of limitations, under 45 U.S.C. § 56, had run as to his claim. 45 U.S.C. § 56 states:

17

No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.

"Compliance with 45 U.S.C. § 56 is a condition precedent to an injured employee's recovery in a FELA action." *Emmons v. Southern Pacific Transp. Co.*, 701 F.2d 1112, 1117 (5th Cir. 1983) (citing *Gulf, Colorado & Santa Fe R.R. Co. v. McClelland*, 355 F.2d 196, 197 (5th Cir. 1966)). "The burden is therefore on the claimant to allege and to prove that his cause of action was commenced within the three-year period." *Emmons*, 701 F.2d at 1118 (citing *Carpenter v. Erie R.R. Co.*, 132 F.2d 362, 363 (3d Cir. 1942), *cert denied*, 318 U.S. 788, 63 S. Ct. 983, 87 L. Ed. 1155 (1943)).

¶36.   In 1989, well over three years before this case was filed, Robinson was diagnosed with pulmonary fibrosis. With this knowledge in hand, the circuit court found:

> With respect to Kelly Robinson, I believe that this claim should be barred by the statute of limitations and dismissed because he was diagnosed with pulmonary fibrosis in 1989. The diagnosis at least put the plaintiff on notice of the accrual of his cause of action and the statute of limitations ran in 1992.

The circuit court applied the United States Supreme Court case of *Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949), in ruling Robinson's claim was barred. *Urie* offers "the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves." 337 U.S. at 170. Stated another way, as related to this case, Robinson's claim for an asbestos related injury will begin to run when Robinson knew or reasonably should have known the injury was present.

¶37.   Also, the circuit court applied the Federal District Court's opinion in *Williams v. S. Pac. Trans. Co.*, 813 F. Supp. 1227 (S.D. Miss. 1992) to Robinson's claim for asbestos

related damages. In ***Williams*** the Federal District Court propounded "the federal courts have applied the discovery [rule] (an objective, 'knew or should have known' test) to determine when the limitation period begins to run." ***Id***. at 1232; *see **Emmons***, 701 F.2d at 1119 (limitation period begins to run when claimant becomes aware that he has been injured and that his injury is work related); ***Fries v. Chi. & Nw. Transp. Co.***, 909 F.2d 1092, 1095 (7th Cir. 1990) (the test is an "objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause"); ***Albert v. Me. Cent. R.R. Co.*** 905 F.2d 541, 544 (1st Cir. 1990); ***Townley v. Norfolk & W. Ry. Co.***, 887 F.2d 498, 501 (4th Cir. 1989). Further, ***Williams*** decreed:

> Actual knowledge by the plaintiff of the governing cause of the injury is not necessary to a finding that the cause of action has accrued. Further, it is not necessary that the plaintiff be formally advised by a physician or receive a medical diagnosis as to the cause of injury for the action to accrue. Nor must the injury reach its maximum severity before the cause is deemed to accrue. The action accrues when the injury first manifests itself to the plaintiff. As recognized by the courts, the discovery rule imposes an affirmative duty on plaintiff to investigate the potential cause of his injury. This is a fair rule since the discovery rule should not be abused by plaintiffs who are aware that an injury exists yet choose to ignore it and fail to investigate the cause. Obviously, such a course of wilful inaction has the potential of visiting prejudice upon defendants who may be blind-sided by lawsuits long after the complained-of negligence.

***Williams***, 813 F. Supp. at 1232 (citations omitted).

¶38. After due consideration, we find the circuit court properly applied the aforementioned precedent to this case in rendering its ultimate finding. Furthermore, there is nothing in the record demonstrating Robinson met his burden of proving he commenced his action within the three-year limitation period. After hearing arguments by both parties, the circuit court was in the best position to determine whether Robinson's claim should be barred by the statute of

19

limitations. In line with this notion and the applicable standard of review, this Court finds Robinson has failed to show the circuit court committed a clear error of judgment. Therefore, the circuit court has not abused its discretion, and this issue is without merit.

## CONCLUSION

¶39. For the aforementioned reasons the circuit court did not abuse its discretion by ordering enforcement of the settlement agreement. Moreover, the circuit court did not abuse its discretion by finding cross-appellant Robinson to be barred pursuant to the statute of limitations defense, as provided in the contingent settlement agreement. Therefore, the judgment of the circuit court is affirmed regarding all issues.

¶40. **AFFIRMED.**

**WALLER AND COBB, P.JJ., DIAZ, EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. RANDOLPH, J., NOT PARTICIPATING.**