## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-CA-00162-SCT

*WRH PROPERTIES, INC.*

*v.*

*THE ESTATE OF CLARENCE JOHNSON, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/1998 |
| TRIAL JUDGE: | HON. THOMAS WRIGHT TEEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | VIRGIL G. GILLESPIE |
| ATTORNEYS FOR APPELLEE: | HARRY R. ALLEN |
| | DAVID W. CRANE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 04/20/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/11/2000 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. The Court is asked to determine whether a telephone conversation between adversaries in a pending lawsuit produced an oral agreement to settle that lawsuit, and, if so, whether that agreement is enforceable? This Court holds that the facts of this case do not represent an enforceable contract and reverses the holding of the Chancery Court.

### STATEMENT OF THE CASE

¶2. On October 12, 1994, WRH Properties, Inc. (WRH) and the Estate of Clarence Johnson, Jr., (Estate) entered into a contract for sale of subdivision lots. Under the terms of the contract, WRH agreed to purchase 244 platted lots for $2,330,000. Kathy Johnson Day, as Executrix of the Estate of Clarence Johnson, Jr.,sought and received ratification and approval of the contract from the Chancery Court.

¶3. On May 4, 1998, WRH filed a breach of contract action against the Estate in the Chancery Court of Harrison County, seeking specific performance, declaratory judgment, injunctive relief, attorneys fees and punitive damages. On May 7, 1998, Kathy Johnson Day (Kathy) telephoned Rusty Hyneman (Rusty), majority owner of WRH, regarding the pending lawsuit. Kathy tape recorded and transcribed this conversation. A copy of this transcript was attached to the pleadings and is at the center of the controversy presently before the Court, as the Estate alleges that Rusty and Kathy, during this conversation, entered into

a binding oral agreement to settle the lawsuit. WRH denies that such a settlement was reached, and instead, argues that the conversation was a "prelude to a formal settlement to be worked out by the lawyers, which never occurred."

¶4. In response to the WRH lawsuit, the Estate filed an answer and counterclaim, dated May 26, 1998, making no mention of the oral settlement agreement allegedly entered into by Rusty and Kathy on May 7. This answer and counterclaim sought a declaratory judgment terminating the subdivision contract. WRH received a transcript of the May 7 telephone conversation on July 14, 1998.

¶5. On September 9, 1998, Rusty was deposed. Throughout his deposition, he repeatedly stated that he had no definite recollection of the specifics involved in the May 7 phone conversation with Kathy. Because of his lack of specific recollection, he could neither confirm nor deny whether the transcript accurately described their entire conversation.

¶6. The Estate filed a Motion to enforce settlement claiming that a binding settlement was entered into during the May 7 telephone conversation. WRH filed an Answer, and a hearing on the Motion to enforce settlement was held before the Chancellor. By Order dated November 16, 1998, the Chancellor sustained the Estate's Motion, finding that the parties had entered into a settlement agreement on May 7. On his own motion, the Chancellor also granted WRH leave to file for attorney fees and costs, finding that the Estate's delay in asserting the settlement defense caused WRH to incur unnecessary expenses. In a Motion for reimbursement of attorney fees dated December 8, 1998, WRH sought $24,337.50 in attorney fees. By order dated December 21, 1998, the Chancellor awarded WRH $5,000 in attorney's fees because "Mrs. Day chose not to assert the settlement until the 11th hour."

¶7. Aggrieved by the ruling of the chancery court, both parties have appealed to this Court. In its appeal, WRH asserts that (1) the parties did not enter into a final settlement agreement on May 7, 1998, (2) even if the parties had entered into a settlement agreement, the Estate can not have the agreement enforced, as the transcript of the May 7 phone conversation does not satisfy the statute of frauds, and (3) even if the parties had entered into a settlement agreement, equity prevents the Estate from now having it enforced because of its failure to assert the settlement defense any sooner than it did. The Estate, in its cross-appeal, asserts that it was improper for the chancery court to award WRH attorney fees.

## ISSUES

**I. Did the trial court err when it ruled that the statute of frauds was not applicable in this case?**

**II. Did the trial court err when it ruled that the election of remedies doctrine and other equitable principles were not applicable in this case?**

**III. Did the trial court err when it found that WRH and the Estate entered into an enforceable agreement during the May 7, 1998, telephone conversation between Kathy Johnson Day and William R. (Rusty) Hyneman?**

**IV. Did the trial court err when it awarded WRH attorney's fees based on the Estate's failure to assert the settlement defense in a timely manner?**

¶8. Issue II is not dispositive on our review of this case, and will therefore not be addressed.

## LEGAL ANALYSIS

¶9. "For review of the findings of a trial judge sitting without a jury, this Court will reverse only where the findings of the trial judge are manifestly erroneous or clearly wrong." *Amerson v. State*, 648 So.2d 58, 60 (Miss. 1994) (citing *Barnes v. Confidential Party*, 628 So.2d 283, 290 (Miss. 1993)).

### Does the transcript of the May 7, 1998 phone conversation between

### Rusty and Kathy fall within the statute of frauds?

¶10. The statute of frauds, in relevant part, states that "[a]n action shall not be brought whereby to charge a defendant or other party upon any contract for the sale of lands unless the agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith." Miss. Code Ann. § 15-3-1 (c) (1972). "Any agreement involving an interest in the land would not be binding unless in writing under the statute of frauds." *Hennessey v. Wilson*, 225 Miss. 336, 370, 83 So.2d 176, 177 (1955).

¶11. The Chancellor, in his order enforcing the settlement, did not engage in a detailed analysis of the applicability of the statute of frauds. He merely stated the following: "The Court need not address this question. Suffice it to say, if the parties reached an agreement, the lawsuit would thereby be settled. The agreement would not transfer ownership of property but rather only settle the pending litigation." Since the Chancellor did not address the statute of frauds, this Court will also not address that issue, as it is not dispositive on the case sub judice.

### Does the transcript indicate that Rusty and Kathy intended to enter

### into a binding settlement agreement on May 7, 1998?

¶12. The existence of an oral contract is a fact issue. *Harris v. Williams*, 43 So.2d 364, 365 (Miss. 1949). The Estate maintains that a binding settlement agreement was made in the May 7, 1998, telephone conversation between Kathy and Rusty. WRH does not deny that a settlement was discussed in that conversation. However, WRH maintains that a close review of the conversation shows that it was merely a prelude to a formal settlement to be worked out by the lawyers, which never occurred, and that the settlement idea was later abandoned.

¶13. During this telephone conversation, Rusty stated "I haven't even gotten into the mechanics of the whole thing and I don't really have time to get in and read the whole deal." Then, after discussing a possible settlement, the following exchange took place:

> Rusty: Now you see, I am easy. We can settle the deal. Now what I'll do. I'll call Jerry and get him to redo the closing statements right quick. I guess.
>
> Kathy: Now, let me tell you what I want to do.
>
> Rusty: Okay, tell me.
>
> Kathy: Because of, because of, I mean, Larry's screaming in here with a lawsuit, I don't like doing business like that. We want some language in there that when we redo this agreement or addendum to

<u>it or however we choose, the lawyers choose the best way to do it</u>, Rusty, I want, we want to nullify any breach on anything previous to this.

(emphasis supplied).

¶14. This language indicates that Kathy and Rusty may have reached an agreement in principle, but it was obvious that the lawyers would have to eventually work out the details. Those details were never worked out.

¶15. It is important to note that this taped conversation occurred after the suit at bar was filed, that the conversation was between the parties, and that the attorneys handling the case were not aware of the conversation until later.

¶16. "Whether contracting parties are bound by an informal agreement prior to the execution of a contemplated formal writing is a matter of intention to be determined by the surrounding facts and circumstances of each particular case. Certain circumstances have been suggested as helpful for determining such an intention, as, for example: (1) whether the contract is usually one put in writing; (2) whether there are few or many details; (3) whether the amount involved is large or small; (4) whether it requires a formal writing for a full expression of the covenants and promises; and (5) whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations." *Mid-Continent Tel. Corp. v. Home Tel. Co.*, 319 F. Supp. 1176, 1189 (N.D. Miss. 1970); 17A Am. Jur. 2d *Contracts* § 39 (1991). Each of the circumstances listed above must be answered in the positive in the instant case.

¶17. Additionally, it is important to note that the original contract between the parties, entered into in 1994, had to be approved by the chancery court, as that contract dealt with the assets of an estate. Had Kathy and Rusty intended to enter into a settlement agreement with their telephone conversation, that agreement would similarly have to be approved by the chancery court before it became effective.

¶18. Accordingly, this Court can come to no other conclusion other than Kathy Day and William R. (Rusty) Hyneman intended that their agreement in principle be reduced to writing before it was binding.

## CONCLUSION

¶19. For the foregoing reasons, this Court reverses the Harrison County Chancery Court's judgment holding that an enforceable agreement was reached by the parties in their telephone conversation, and the case is remanded to that court for a trial on the merits. The chancery court's award of attorney fees is vacated without prejudice, and the issue may be reconsidered by the court at the trial of this matter.

¶20. **REVERSED AND REMANDED.**

**PITTMAN AND BANKS, P.JJ., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**