# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00065-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY*

*v.*

*GARY R. BYRD, ROBERT BOWDEN, WILLIAM L. COOK, JOHN CURLIN, LYLE N. ERNEST, GEORGE A. FOUSE, GARY E. FREDERICKSON, FRANKLIN D. GOSSUM, Q.B. GRAY, JOHN ED HOWELL, WILLIE JOHNSTON, GARY JOLLY, E.J. LEDBETTER, JR., BOBBY L. LESSEL, THOMAS G. MUDD, JERRY C. McKISSACK, LYLE McMANNIS, RONALD E. MILLER, TED E. MORRISON, CHARLES PAYNE, ROBERT D. PAYNE, KENNETH W. POUNDERS, FRED L. ROGERS, BILLY WAYNE SIMS AND WILLIAM L. TAYLOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/2008 |
| TRIAL JUDGE: | HON. ROBERT LOUIS GOZA, JR. |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DANIEL J. MULHOLLAND |
| | THOMAS R. PETERS |
| | TANYA D. ELLIS |
| | HEATHER JULIA WILKINS |
| ATTORNEYS FOR APPELLEES: | ELIZABETH A. CHIAPPETTA |
| | ROBERT N. PEIRCE, JR. |
| | LOUIS H. WATSON, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/26/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1. After a large number of its former employees sued Illinois Central Railroad Company ("ICRR"), alleging occupational exposure to asbestos, plaintiffs' counsel and ICRR's counsel met to discuss the possibility of a settlement. Although the parties dispute exactly what transpired at the meeting, they agree that ICRR later sent settlement checks to a substantial majority of the 216 plaintiffs after receiving signed releases and other pertinent information from them. However, ICRR refused to send settlement checks to several remaining plaintiffs. Of these remaining plaintiffs, twenty-five sought enforcement of the alleged settlement agreement. Ultimately, the trial court granted the remaining plaintiffs' motion to enforce settlement, and ICRR appeals.

**FACTS AND PROCEDURAL HISTORY**

¶2. The original action in this case was filed on December 19, 2002, by 216 former employees of ICRR in the Circuit Court of Hinds County, Mississippi. The plaintiffs sought damages under the Federal Employers' Liability Act (FELA) for personal injuries related to occupational exposure to asbestos. In response, ICRR raised, among others, the defenses of improper joinder and improper venue.

¶3. On January 23, 2004, Robert Peirce met with Thomas Peters to discuss a possible settlement of the claims against ICRR. The meeting took place at Peirce's office in Pittsburgh, Pennsylvania ("the Pittsburgh meeting"). At issue is whether the parties entered into a binding settlement agreement or a conditional settlement process. Plaintiffs allege that all claims were settled that day at the Pittsburgh meeting. ICRR alleges that the claims were to be settled on a case-by-case basis only if certain criteria were met, specifically: (1) that the

2

plaintiff had not signed any prior occupational release, (2) that the plaintiff's claim was not barred by the statute of limitations, and (3) that each plaintiff must complete and sign a pulmonary questionnaire, provide proof of employment, and submit to a B-read from a competent and credible reader.[1] It is undisputed that after the Pittsburgh meeting, ICRR settled all plaintiffs' claims save approximately thirty-seven.[2]

¶4.    On June 23, 2006, twenty-five of the remaining plaintiffs filed a motion to enforce settlement,[3] alleging that the parties had reached a binding settlement agreement at the Pittsburgh meeting regarding all plaintiffs.[4] ICRR responded, alleging that the Pittsburgh meeting had produced only a conditional settlement process, by which plaintiffs' claims would be settled on a case-by-case basis after certain criteria were met. ICRR claimed that the majority of the remaining plaintiffs had signed a prior occupational release, and that the

---

[1]This Court has noted that "[a] B-reader is a doctor certified by NIOSH [the National Institute for Occupational Saftey and Heath] to identify the presence of asbestos- and silica-related disease precursors on chest x-rays." *Choctaw, Inc. v. Campbell-Cherry-Harrison-Davis and Dove*, 965 So. 2d 1041,1046 n.10 (Miss. 2007) (citation omitted).

[2]The exact number of original plaintiffs and those with whom ICRR refused to settle is unclear from the record.

[3]Plaintiffs' counsel originally filed a motion to enforce settlement on December 20, 2004, but withdrew the motion on September 15, 2005, to pursue the claim in another forum. The plaintiffs then filed a petition to enforce in a Pennsylvania court, but the court dismissed it for lack of jurisdiction.

[4]In reality, about thirty-seven claims had not been settled out of the original 216. However, about ten or so were, for reasons not apparent from the record, left out of the June 23, 2006, motion to enforce. In his November 2006 order, the trial judge severed those ten claims and dismissed them without prejudice. The plaintiffs' attorneys contended that they subsequently filed a motion to amend their motion to enforce, in an effort to add the ten omitted plaintiffs to the action before us. No such motion was found on the docket or in the court file. The trial judge allowed the plaintiffs' attorneys to file another motion to amend, but then ultimately denied it in his September 2008 final order. Thus, the trial judge's final order considers only twenty-seven plaintiffs, and ultimately orders settlement with twenty-five of them, dismissing two because of prior release issues.

B-reads submitted by each plaintiff were read by Dr. Ray Harron, whose competence and credibility had been compromised.[5] Finally, ICRR filed a motion to sever and dismiss the claims of the remaining plaintiffs (arguing improper joinder and improper venue) and asked the trial court to rule on the motion before reaching the merits of the plaintiffs' motion to enforce settlement.

¶5.    The trial court conducted a hearing on the parties' motions on November 6, 2006, during which the court heard arguments of counsel. The parties offered conflicting affidavits of the two attorneys involved in the Pittsburgh meeting – neither of whom appeared at the hearing. The court entered an order on November 17, 2006, holding: (1) that ICRR's motion to sever and dismiss was denied;[6] (2) that no agreement existed between the parties to disqualify a plaintiff who had executed a release from the settlement process; (3) that no agreement existed to disqualify a plaintiff based on the statute of limitations; (4) that an enforceable agreement existed between the parties to settle the claims of the plaintiffs upon the submission of a release for the specified amount, a pulmonary questionnaire, proof of employment, and a B-read from a competent reader; (5) that ICRR had grounds to question

---

[5]*See **In Re Silica Products Liability Litigation**, 398 F. Supp. 2d 563, 603-608; 635 (S.D. Tex. 2005) (stating that Dr. Harron's diagnoses, among others, "were manufactured for money"); Jonathan D. Glater, *Reading X-Rays in Asbestos Suits Enriched Doctor*, N.Y. Times, Nov. 29, 2005, *available at* http://www.nytimes.com/2005/11/29/business/29asbestos.html? (accessed July 21, 2010).

[6]It appears from the record that the trial judge did not deny ICRR's Motion to Dismiss on the merits; rather, he deemed it moot because he found that a valid settlement existed. At the hearing on November 6, 2006, he stated: "[I]t occurs to me that a settlement, just like any other contract, if it was entered into is enforceable. If it wasn't, of course, it's not. And, of course, if there is . . . an enforceable settlement, then there is nothing to transfer and sever, you see. So I think the settlement issue has got to be addressed first."

the B-reads submitted by Dr. Harron and to require the submission of another B-read from a competent reader; and (6) that the plaintiffs had complied with the terms of the settlement agreement except for the submission of a B-read from a competent reader. The trial judge ordered ICRR to pay each plaintiff[7] within a reasonable time after receiving a B-read from a competent reader.

¶6.     Subsequently, the plaintiffs submitted second B-reads to ICRR. ICRR refused to pay, however, claiming that the new B-reads also were questionable. ICRR propounded discovery to the plaintiffs, requesting information about the doctors who had performed the second B-reads. The plaintiffs each filed identical responses, objecting to the information requested as "not relevant to the pending cause of action." ICRR filed its Supplement to Response to Motion for Sanctions and Motion to Compel, arguing that "plaintiffs' responses to discovery are critical in that the competency and credibility of the selected b-readers . . . is in serious doubt." ICRR later supplemented its motion to compel with an affidavit from Dr. John Parker that seriously questioned the methods and procedures used by the doctors who submitted the second B-reads.

¶7.     Plaintiffs filed a second motion to enforce, arguing that they had fulfilled the trial judge's requirements of supplying a competent B-read, and that ICRR's continued refusal to pay had "reached a level of pure maliciousness."[8] The trial judge conducted a hearing on

---

[7]ICRR was to pay each plaintiff the amount listed next to his name in the Motion to Enforce.

[8]Plaintiffs previously had filed a Motion for Sanctions against ICRR for its continued refusal to pay following the submission of the second B-reads. The trial judge denied the motion in his final order.

the motions[9] and, on September 26, 2008, issued his final order. He found that each of the twenty-five remaining plaintiffs had "fully complied with the conditions precedent to payment of settlement," specifically holding that they had submitted B-reads from competent readers. ICRR filed a motion to amend the final judgment, which the trial court denied, and ICRR appealed.

## ANALYSIS

¶8.    ICRR presents five issues on appeal:

(1) Whether the trial court committed plain error when it decided plaintiffs' motion to enforce settlement before determining whether plaintiffs' claims were properly before the court.
(2) Whether trial court erred when it decided disputed, material factual issues in granting plaintiffs' motion to enforce settlement;
(3) Alternatively, whether the trial court's enforcement of the purported settlement agreement was clearly erroneous and constitutes an abuse of discretion;
(4) Alternatively, whether ICRR was erroneously denied discovery (a) related to the unreliable B-reads tendered by plaintiffs in support of their claims; and (b) related to the effect of prior occupational releases on plaintiffs' current claims; and
(5) In the alternative, whether the "settlement agreement" was unenforceable under the Mississippi Statute of Frauds

*I. Whether the trial court erred when it ruled on the plaintiffs' motion to enforce settlement before determining whether the plaintiffs' claims were properly before the court.*

¶9.    ICRR claims that the trial judge committed plain error when he chose to proceed with the merits of the plaintiffs' motion to enforce settlement before addressing its motion to sever and dismiss. We find, however, that the trial judge's reasoning in doing so is sound and hold that his decision was correct.

¶10.    At the November 6, 2006, hearing, the trial judge stated:

---

[9]The hearing consisted of arguments from counsel only; no witnesses were called.

> [I]t occurs to me that settlements, just like any other contract, if it was entered into it is enforceable. If it wasn't, of course, it's not. And, of course, if there is . . . an enforceable settlement, then there is nothing to transfer and sever, you see. So I think the settlement issue has got to be addressed first.

In other words, if the settlement was found to be valid, whether the plaintiffs were improperly joined or in the wrong venue in the original action was irrelevant. If a settlement agreement was reached, the plaintiffs relinquished the right to pursue their claims against ICRR for negligent exposure. Whether they were properly joined in the original action does not affect the consideration exchanged in the settlement-agreement meeting. Indeed, a settlement agreement often is reached before any litigation commences. On a motion to enforce a settlement agreement, what may well be viable defenses to a claim are simply not relevant unless they are a part of the settlement agreement. In this case, that judge found that they were not. Thus, we hold that the trial judge was correct and find this issue to be without merit.

*II. Whether the trial court erred when it decided disputed, material factual issues in granting plaintiffs' motion to enforce settlement.*

¶11.    A review of this Court's cases reveals that trial judges presented with motions to enforce settlement agreements customarily make findings of fact related to the existence and/or terms of the settlement agreements as necessary to rule on the motions to enforce settlement. Further, this Court has not found such trial-court action to be improper. *See, e.g.*, ***Ill. Cent. R.R. v. McDaniel***, 951 So. 2d 523, 525-26 (Miss. 2006) (trial judge made findings of fact in deciding plaintiffs' motion to enforce settlement agreement); ***Howard v. TotalFina E&P USA, Inc.***, 899 So. 2d 882, 888-89 (Miss. 2005) (trial judge made findings of fact regarding existence of a settlement agreement in denying plaintiff's motion to enforce

7

settlement agreement); ***Tupelo Redevelopment Agency v. Abernathy***, 913 So. 2d 278, 282-85 (Miss. 2005) (trial judge made findings of fact in denying defendant landowners' motion to enforce settlement agreement); ***WRH Props., Inc. v. Estate of Johnson***, 759 So. 2d 394, 395 (Miss. 2000) (trial judge made findings of fact regarding existence of a settlement agreement in granting defendant's motion to enforce settlement agreement).

¶12.    In this case, the trial judge made informed findings of fact and law. The trial judge reviewed all of the parties' pleadings, considered all of the other affidavits submitted by the plaintiffs' attorney, Peirce, and ICRR's attorney, Peters, describing their understanding of the settlement negotiations, and conducted two quite lengthy hearings on the disputed issues of fact. Moreover, multiple attorneys representing ICRR appeared before the trial judge and had ample opportunity to present evidence and argument.

¶13.    ICRR never asked the trial judge to hold a hearing in addition to the two that were held. In fact, at the second hearing, the trial judge even invited the parties to request an additional hearing if they deemed it necessary, but ICRR evidently chose not to request one at that time. Furthermore, there is no evidence that the trial judge prevented ICRR from acquiring additional evidence regarding what Peirce and Peters had agreed to at the Pittsburgh meeting by, for example, deposing Peirce or calling witnesses at either hearing.

¶14.    In addition, this Court previously has held that unless substantial rights are affected, issues not presented to the trial judge are procedurally barred from being raised for the first time on appeal. ***Dora v. State***, 986 So. 2d 917, 925 (Miss. 2008). In this case, the record reveals that ICRR never raised the issue of the need for an evidentiary hearing either in

addition to or in lieu of the hearings which were held. We conclude that it was proper for the trial judge to make findings of fact in ruling on plaintiffs' motion to enforce settle agreement.

*III. Whether the trial court's enforcement of the settlement agreement was clearly erroneous and constitutes abuse of discretion.*

¶15.   It is well-settled that "this Court will not disturb the findings of the chancellor unless it is shown the chancellor was clearly erroneous and the chancellor abused his discretion. Also a circuit judge sitting without a jury is accorded the same deference with regard to . . . factual findings as is a chancellor." **Ill. Cent. R.R. v. McDaniel**, 951 So. 2d 523, 526 (Miss. 2006) (internal quotations and citations omitted). In determining whether a trial judge abused his discretion, the reviewing court must have a "'definite and firm conviction' that the court below committed a clear error of judgment and the conclusion it reached upon a weighing of the relevant factors." **Howard v. TotalFina E&P USA, Inc.**, 899 So. 2d 882, 888 (Miss. 2005) (quoting **Caracci v. Int'l Paper Co.**, 699 So. 2d 546, 556 (Miss. 1997)).

¶16.   A settlement agreement is a contract. **McManus v. Howard**, 569 So. 2d 1213, 1215 (Miss. 1990). This Court previously has stated that a "meeting of the minds" must exist between the parties in order to have a settlement. **Thomas v. Bailey**, 375 So. 2d 1049, 1052 (Miss. 1979). Further, in order for a settlement agreement to be enforced, the party claiming the benefit of enforcement must prove by a preponderance of the evidence that there was a meeting of the minds. **Hastings v. Guillot**, 825 So. 2d 20, 23 (Miss. 2002).

¶17.   As noted above, the trial court has thoroughly considered the arguments and evidence that each party presented in support of their conflicting accounts of what Peirce and Peters agreed to at the Pittsburgh meeting. This evidence included the fact that ICRR already had

9

paid approximately 180 of the approximately 216 plaintiffs, and many of the plaintiffs who already had been paid had signed prior releases (when they had settled claims for other occupational injuries). Furthermore, the approximately thirty-six remaining, unpaid plaintiffs had provided the same documentation to ICRR as those plaintiffs who had been paid. Thus, it was not clearly erroneous nor an abuse of discretion for the trial judge to find that Peirce and Peters did have a "meeting of the minds" regarding settlement of the claims of all plaintiffs, including those who had signed prior releases.

*IV. Whether ICRR was erroneously denied discovery (a) related to the questionable B-reads submitted by the plaintiffs in support of their claims; and (b) related to the effect of prior occupational releases on plaintiffs' current claims.*

¶18.     This Court reviews the denial of a motion to compel discovery under the abuse-of-discretion standard on appeal. ***Edmonds v. Williamson***, 13 So. 3d 1283, 1292 (Miss. 2009) (citing ***Taylor Mach. Works Inc. v. Great American Surplus Lines Ins. Co.***, 635 So. 2d 1357 (Miss. 1994)).

¶19.     ICRR argues that it was erroneously denied discovery regarding the plaintiffs' second B-reads that were submitted in support of the plaintiffs' claims for settlement and discovery related to the effect of the prior occupational releases on plaintiffs' current claims. However, there is no indication that ICRR ever requested a hearing regarding  discovery related to the second B-reads. Moreover, the trial judge clearly found that the second B-reads were sufficient to meet the conditions of the settlement agreement. Therefore, this Court finds this issue without merit.

*V. Whether the settlement agreement was enforceable under the Mississippi Statute of Frauds.*

10

¶20.    ICRR argues that plaintiffs' settlements are barred by Mississippi's Statute of Frauds, Mississippi Code Annotated section15-3-1(d), because the alleged agreement could not be performed within fifteen months. We disagree.

¶21.    Mississippi's Statute of Frauds states, in part,

An action shall not be brought whereby to charge a defendant or other party:

 . . .

(d) upon any agreement which is not to be performed within a space of fifteen months from the making thereof; or

. . .

unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

Miss. Code Ann. §15-3-1 (Rev. 2003). A settlement agreement is a contract. *McManus*, 569 So. 2d at 1215. This Court previously has held that "where a contract is for an indefinite period of time with the possibility of performance within fifteen months, it is not within the statute of frauds. *American Chocolates, Inc. v. Mascot Pecan Co, Inc., et al.*, 592 So. 2d 93, 95 (Miss. 1991) (citing *Beane v. Bowden*, 399 So. 2d 1358, 1361 (Miss. 1981)).

¶22.    The record reflects that a settlement was reached at the Pittsburgh meeting on January 23, 2004. Since the Pittsburgh meeting, the claims of approximately 180 of the approximately 216 plaintiffs were paid by ICRR well within the fifteen-month time limit designated by Mississippi's Statute of Frauds. Because ICRR could pay and did pay a majority of the plaintiffs' claims in settlement, we find that ICRR could have paid the remaining plaintiffs'

11

claims within the statutory time period. Therefore, ICRR may not claim Mississippi's Statute of Frauds as a defense to this settlement agreement.

## CONCLUSION

¶23.     This Court finds that the trial judge was correct in finding that each of the twenty-five remaining plaintiffs had complied with the conditions of settlement and in enforcing the settlement agreement. The trial court also properly denied ICRR's motion to amend the final judgment. Thus, the decision of the Circuit Court of Holmes County is affirmed.

¶24.     **AFFIRMED.**

**KITCHENS AND CHANDLER, JJ., CONCUR.  PIERCE, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION.  DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, P.J., AND LAMAR, J.  LAMAR, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., CARLSON, P.J., AND DICKINSON, J.  RANDOLPH, J., NOT PARTICIPATING.**

**PIERCE, JUSTICE, CONCURRING IN RESULT ONLY:**

¶25.     I write separately to address Justice Dickinson's[10] twenty-five-million-dollar hypothetical included in his dissent.  Simply put, his hypothetical has no application to the facts of this case.  In other words, he compares apples to oranges.

**DICKINSON, JUSTICE, DISSENTING:**

¶26.     Today's decision (albeit a plurality) would grant to a trial judge the authority to decide whether or not the parties have settled and, if so, the terms of the settlement.  Never mind that in this case, the only proof of a settlement (and its terms) before the trial court was a pair of

---

[10] I agree with the dissent's assertion in footnote number 11 that differential calculus can be extremely difficult.  Likewise, some cases that come before this Court are extremely difficult. This case is a prime example.

12

conflicting affidavits from the lawyers. Never mind that – as far as one can tell from reading the record – the plaintiffs' lawyer (whose affidavit apparently persuaded the trial judge) has never been in the presence of the trial judge. Never mind that there were no witnesses, and that the trial judge never even heard from the client who actually has to pay the money. And never mind that the terms of the alleged settlement were not reduced to writing – not even so much as bullet points scribbled on the back of a napkin.

¶27. So let me see if I have it straight. After today, the plurality's logic would allow a plaintiff to sue one of our cities – let's say Jackson or Tupelo – in a slip-and-fall case. The lawyers could then meet to discuss discovery and possible settlement. Plaintiff's lawyer then could file a motion to enforce a settlement, claiming the city's lawyer agreed to settle for $25 million. The city's lawyer files an affidavit saying, "no, we didn't." Other than the conflicting affidavits, there is no evidence of a settlement.

¶28. Without consulting (or ever even meeting) the plaintiff's lawyer who signed the affidavits; and without hearing any testimony from the plaintiff or the city potentially on the hook for the $25 million; the judge ponders the credibility of the conflicting affidavits and finds the plaintiff's lawyer's affidavit more believable. So the judge enters an order enforcing the settlement, and the city is on the hook for $25 million. Delighted with the results, the plaintiff's lawyer files another lawsuit the following week.[11]

---

[11]My colleague's bewilderment with my example reminds me of my college days taking differential calculus – the fact that one doesn't understand it doesn't mean it isn't correct.

¶29. After diligent effort, I am unable to imagine a more absurd judicial process or result. I respectfully dissent.

**CARLSON, P.J., AND LAMAR, J., JOIN THIS OPINION**.

**LAMAR, JUSTICE, DISSENTING:**

¶30. Because the determination that a settlement agreement existed and the terms of that agreement necessarily required the trial court to weigh evidence and judge credibility, even though the only evidence before the court was presented through the conflicting affidavits of two attorneys, I must dissent. I find this procedure for resolving disputed facts improper. I would find that the trial court erred when it granted the plaintiffs' motion to enforce and accordingly, I dissent.

¶31. Contrary to the plurality's assertion that trial judges "customarily make findings of fact" when presented with motions to enforce settlement, and that this Court has "not found such trial court action to be improper," I find no Mississippi Supreme Court cases in which this Court actually has been presented with this question. In the first case cited by the plurality to support its assertion, *Illinois Central v. McDaniel*,[12] the parties *stipulated* that the trial judge could be the finder of fact. (*See* ¶11 *supra*). And in the other three cases cited by the plurality,[13] the issue of whether the trial court properly decided issues of material fact

---

[12]*Ill. Cent. R.R. v. McDaniel*, 951 So. 2d 523 (Miss. 2006).

[13]*Howard v. TotalFina E&P USA, Inc.*, 899 So. 2d 882 (Miss. 2005); *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278 (Miss. 2005); *WRH Props., Inc. v. Estate of Johnson*, 759 So. 2d 394 (Miss. 2000). Additionally, I note that *Howard v. TotalFina* seems to *weaken* the plurality's argument, as the trial judge in that case denied the motion to enforce settlement because the plaintiff had failed to prove a meeting of the minds. *Howard*, 899 So. 2d at 889.

14

was not raised as an issue on appeal. Thus, the fact that this Court has "not found such trial court action to be improper" should not prevent us from doing so today.

¶32. I agree with the analysis employed by the United States District Court for the Northern District of Mississippi in *Volland v. Principal Residential Mortgage*.[14] There, the plaintiff sued Nationwide for various claims arising out of damage to a home caused by Hurricane Katrina.[15] Nationwide filed a Motion to Enforce Settlement Agreement and to Dismiss, based on a confidential settlement agreement signed by the parties.[16] The plaintiff owned *two* properties insured by Nationwide, however, and claimed that he understood the settlement agreement to pertain to one property only.[17]

¶33. At the outset, the district court stated: "Because Nationwide's motion presents matters outside the pleadings, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."[18] The district court ultimately denied Nationwide's motion to enforce settlement, stating:

> [T]here is at present a genuine issue of material fact as to whether the scope of the settlement agreement is the product of mistake or indefiniteness. Under the entirety of the circumstances (which is most certainly subject to further development) and for purposes of Rule 56, it is not for the Court to weigh the evidence or evaluate the credibility of witnesses, but to consider the evidence

---

[14] *Volland v. Principal Residential Mortgage*, 2009 WL 1293547 (S.D. Miss. May 7, 2009) (This case was not reported in the federal reporter.).

[15] *Id.* at *1.

[16] *Id.*

[17] *Id.* at *2.

[18] *Id.* at *1 (internal citations omitted).

15

submitted by the parties in support of and in opposition to the motion and grant all reasonable inferences to the non-moving party . . . .[19]

Several other jurisdictions also take the position that a trial judge should not grant a motion to enforce settlement if disputed factual issues are present.[20]

¶34.    I disagree with the plurality's insinuation that, because ICRR did not ask for an additional evidentiary hearing, it somehow waived its objection to the trial judge acting as the finder of fact.  To the contrary, ICRR made it clear on several occasions that it did not agree that the trial judge could make findings of fact.  For example, in its response to plaintiffs' motion to enforce, ICRR stated: "Illinois Central does not consent [to any] determination of disputed fact by the Court.  Illinois Central agrees that this Court is empowered to render rulings of law based on undisputed facts."  At the November 6, 2006,

---

[19]*Id.* at *3.

[20] *See, e.g.*, ***Voicestream Minneapolis, Inc. v. RPC Properties, Inc.***, 743 N.W.2d 267, 273 (Minn. 2008) (holding that a trial court "shall treat a motion to enforce a settlement agreement as it would a motion for summary judgment, and explicitly grant or deny each claim"); ***Barnes v. Lagoon Corp., Inc.***, 2006 WL 829114, at *1 (Utah App. Mar. 30, 2006) ("It is clear from the record that there are factual disputes regarding whether a settlement agreement was reached and what exactly the terms of that agreement might have been. The district court found that an agreement was created and that Appellant's claims to the contrary were 'unlikely,' but these findings necessarily required the court to weigh evidence and judge credibility without the benefit of hearing actual testimony from the parties and without the benefit of cross-examination. Such summary resolution of conflicting facts presented wholly in affidavits is improper.") (internal citation omitted); ***Staley v. Herblin***, 188 S.W.3d 334, 336 (Tex. App. 2006) ("Where fact issues are raised or consent has been withdrawn, the only method available for enforcing a settlement agreement is through summary judgment or trial."); ***Webb v. Webb***, 602 S.W.2d 127, 129 (Tex. Civ. App. 1980) (Although ultimately finding that the appellant had waived his right to a jury trial, the Court stated: "This Court is in agreement with appellant insofar as he states that a fact question was presented as to the authority of counsel for appellant to enter into the settlement agreement. Appellant was entitled to have a jury determination of that dispute.").

hearing, counsel for ICRR stated: "We have not agreed to any such determinations of disputed fact by the court in this case." Later in the hearing, counsel for ICRR stated:

> Counsel for ICRR: If I may, plaintiff cited one case, the McDaniel[21] case. There is a very important difference between the issue in McDaniel and the issue here, and that is this. Even though we're dealing with the issue of prior releases and terms of settlement, that is, in that case, we stipulated that the circuit court judge could be a finder of disputed facts. When we had a hearing like this one, we made that stipulation in that case.

In my view, ICRR should not now be penalized for the plaintiffs' failure to meet their burden of proof that a meeting of the minds had occurred and that no disputed material fact existed.

¶35. Finally, I must point out that the plurality's statement that "the approximately thirty-six remaining, unpaid plaintiffs had provided the same documentation to ICRR as those plaintiffs who had been paid." (Plur. Op. ¶17). That is simply not true. While it might be true that the unpaid plaintiffs had provided ICRR with the same basic pulmonary questionnaire, the information on those questionnaires certainly was different, informing ICRR of the various prior release and statute-of-limitation issues that remain disputed.

¶36. In sum, today's decision enforces a conditional settlement agreement with absolutely no proof other than the conflicting affidavits of two attorneys. One of those attorneys never even appeared before the court in Mississippi, but managed, nonetheless, to win settlement for all of his plaintiffs with a simple affidavit. This type of summary procedure is totally ill-suited for cases such as this that involve complex factual issues and can be easily abused, as evidenced by this ruling. I simply cannot agree that a trial judge has the authority to force settlement under the facts of this case.

---

[21] *Ill. Cent. R.R. Co. v. McDaniel*, 951 So. 2d 523 (Miss. 2006).

**WALLER, C.J., CARLSON, P.J., AND DICKINSON, J., JOIN THIS OPINION**.