RUSSELL, J., for the Court:
¶ 1. Cathy Grant appeals the Hinds County Chancery Court’s denial of her request to amend an order that vested Willie Donelson with fee-simple title to a house in Jackson, Mississippi. On appeal, Grant asserts that the chancery court erred by (1) finding an oral contract between her and Donelson and (2) applying the constructive-trust doctrine to order Grant to convey the house to Donelson. We find no error and affirm the chancery court’s judgment.
FACTS
¶ 2. The undisputed facts are as follows. Grant purchased the house and property she had been renting for approximately six years. Grant used $35,543.43 in cash to purchase the cashier’s check that would pay off the mortgage on the house. At closing, Grant placed the warranty deed to the house in her name. The parties dispute the source of the funds that Grant used to purchase the cashier’s check; their respective versions follow below.
¶ 3. Donelson testified that Grant’s pending eviction from the house initiated their agreement. He explained that Grant had been renting the house for $600 per month, but she had been delinquent in her *571 rent payments for three months. According to Donelson, Grant had been preparing to move in with her mother before she asked to borrow money from him. Donel-son contends he gave Grant $40,600 in cash to purchase the house.[1] In exchange, Grant agreed to place the warranty deed in Donelson’s name at closing and to rent the house from him for $425 per month. Donelson testified that he had gone with Grant to her real-estate attorney’s office for the closing transaction. But Donelson had became ill, so Grant took Donelson to his house. Thus, Donelson was not present when the closing was completed.
¶ 4. Donelson had been dealing in real estate for years and earned part of his income from his property-management business. Thus, Donelson explained that he had $40,600 in cash available, which he had intended to use to purchase additional rental properties.
¶ 5. Donelson stated that he asked Grant on three occasions after the closing to convey the house to him or to return his money. When she would not do either, he filed a complaint with the chancery court, which requested ownership of the house and an award of unpaid rent.
¶ 6. Grant, however, denied she and Do-nelson had any agreement that would have given Donelson an ownership interest in her house. Instead, Grant testified that Donelson had loaned her $5,000 in cash, which she had agreed to repay in $400 monthly payments. Grant stated that she used Donelson’s $5,000 loan to her and $30,000 in personal funds to purchase the house and property.
¶ 7. Grant admitted that Donelson had gone with her to the bank to purchase the cashier’s check that she used for the closing transaction. She also stated that Do-nelson had gone with her to the closing transaction, but she took Donelson to his home when Donelson stated he had a handgun.
¶ 8. A few months after the closing, Grant attempted to tender a payment of $400 to Donelson. In response, he requested that she convey the house to him, but she declined.
¶ 9. After a hearing, the chancery court issued an order and opinion granting Do-nelson’s request for ownership of the house. The chancery court found that Do-nelson and Grant had an oral contract with two parts. The chancery court found that under the first part of the contract, Donel-son had agreed to provide $40,600 for Grant to purchase the house in exchange for Grant placing the warranty deed to the house in his name. The chancery court held that a constructive trust was created as to the $40,600. Because Grant had “by an abuse of confidence” gained title to property that she was not entitled to hold, the chancery court ordered Grant to execute a warranty deed to convey the property to Donelson.
¶ 10. The chancery court found that under the second part of the contract, Grant had agreed to rent the house from Donelson. The chancery court held that because Grant’s agreement to rent from Donelson created a lease for presumptively longer than one year, the oral agreement was barred by the statute of frauds. See Miss.Code Ann. § 15 — 3—1(c) (Rev. 2003).
¶ 11. Grant filed a post-trial motion under Mississippi Rule of Civil Procedure 60. Before the chancery court decided the motion, Grant filed a notice of appeal. After a hearing on Grant’s post-trial motion, the *572 chancery court issued an amended order and opinion that ordered a $40,600 lien be placed against Grant’s house in favor of Donelson.
¶ 12. Donelson later filed a post-trial motion under Rule 60, requesting the chancery court to reinstate its previous order which awarded him ownership of the house. In his post-trial motion, Donelson argued that the lien was unenforceable by virtue of Mississippi Code section 85-3-21 (Rev. 2011), since Grant had claimed the house as her homestead. (Exempting up to $75,000 value of property that debtor owns and occupies as a primary residence from seizure or sale by judgment creditors). The chancery court issued a second amended order and opinion that ordered Grant to convey the property to Donelson by warranty deed.
DISCUSSION
I. Jurisdiction
¶ 13. We must consider whether this Court has jurisdiction. Under Mississippi Rule of Civil Procedure 59, “[a] motion to alter or amend the judgment shall be filed not later than ten days after entry of the judgment.” The final judgment was filed on September 28, 2010. On October 11, 2010, Grant filed her motion to reconsider and amend and alter judgment. Therefore, Grant’s motion was untimely filed. As such, jurisdiction is proper in this Court, as the notice of appeal was filed on October 28, 2010.
¶ 14. Additionally, since Grant filed her notice of appeal before the disposition of her post-trial motion, we pause to verify that this case is properly before this Court. Mississippi Rule of Appellate Procedure 4(d) explains:
If any party files a timely motion of a type specified immediately below the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion under ... Mississippi Rules of Civil Procedure ... Rule 59 to alter or amend the judgment; (4) under Rule 59 for a new trial; or (5) for relief under Rule 60 if the motion is filed no later than 10 days after the entry of judgment. A notice of appeal filed after announcement or entry of the judgment but before disposition of any of the above motions is ineffective to appeal from the judgment or order, or part thereof, specified in the notice of appeal, until the entry of the order disposing of the last such motion outstanding.
The comments to Rule 4 further explain that:
Rules 4(d) and 4(e) now provide that a notice of appeal filed before the disposition of a specified post-trial motion will become effective upon disposition of the motion. A notice filed before the filing of one of the specified motions or after the filing of a motion but before its disposition is, in effect, suspended until the motion’s disposition, whereupon the previously filed notice effectively places jurisdiction in the Supreme Court.
The chancery court decided Grant’s post-trial motion on January 5, 2011. By filing a post-trial motion on January 18, 2011, Donelson further suspended this Court’s jurisdiction until the chancery court disposed of his post-trial motion. See M.R.A.P. 4(d), 26. Under Rule 4, this Court’s jurisdiction became effective on March 1, 2011, when the chancery court issued its second amended order and opinion. M.R.A.P. 4. Since this case is properly before us, we turn to the merits.
¶ 15. The standard of review for appeals from the denial of motions under Mississippi Rule of Civil Procedure 60(b) is abuse of discretion. Perkins v. Perkins, *573 787 So.2d 1256, 1261 (¶ 9) (Miss.2001). This Court will uphold a chancellor’s factual findings “when supported by substantial evidence unless the chancellor abused [her] discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002) (citation omitted). The chancellor’s legal conclusions are reviewed de novo. Joel v. Joel, 43 So.3d 424, 429-30 (¶ 18) (Miss.2010).
II. Oral Agreement and the Statute of Frauds
¶ 16. On appeal, Grant argues that the evidence does not support an oral agreement between her and Donelson. According to Grant, the evidence shows that she used personal funds and an unsecured loan from Donelson to purchase her long-time residence. Grant further argues that the statute of frauds renders the alleged oral agreement between her and Donelson unenforceable. See Miss.Code Ann. § 15-3-1 (Rev. 2003).
¶ 17. The Mississippi Supreme Court has stated that “[t]he existence of an oral contract is a fact issue.” WRH Props., Inc. v. Estate of Johnson, 759 So.2d 394, 396 (¶ 12) (Miss.2000). “When a trial judge sits as the finder of fact, he or she has the sole authority to determine the credibility of witnesses.” Simmons v. Jaggers, 914 So.2d 693, 696 (¶ 14) (Miss.2005).
¶ 18. Substantial evidence supported the chancellor’s finding of an oral contract between Grant and Donelson, which required Grant to title the house in Donelson’s name in exchange for receiving $40,600 from him to purchase the house. At trial, Grant admitted that she needed financial help to purchase the house and that she received help from Donelson. Although Grant stated that she received only $5,000 from Donelson, when asked whether she worked during the month that she purchased the house, Grant responded: “I’m not sure. I’m pretty sure I was working somewhere. I mean, I do work. Sometimes, you know, like I said, I do part-time work or do work for other people, so I did have income.” It was the chancellor’s duty to evaluate the credibility of the witnesses, and ultimately, the chancellor found Donelson’s testimony more credible than Grant’s testimony. The record supports the chancellor’s finding of an oral contract; therefore, this issue lacks merit.
¶ 19. Although Grant and Do-nelson had an oral agreement, the statute of frauds does not render their agreement unenforceable. In Mississippi, “the statute of frauds does require that all contracts involving the sale of land be in writing.” Allred v. Fairchild, 785 So.2d 1064, 1069 (¶ 12) (Miss.2001) (emphasis added). See also Miss.Code. Ann. § 15-3-1(c) (contracts for the sale of lands are unenforceable without evidence of written agreement, signed by the party being sued).
¶ 20. In this case, the agreement between Grant and Donelson did not involve the sale of land and did not have to be in writing in order to be enforceable. Instead, Grant’s role in the sale of the house was as Donelson’s agent, not as the conveyor of the real property. See, e.g., Allred, 785 So.2d at 1069 (¶ 13) (holding agreement to convey broker ten percent of interest in mineral lease once lease became profitable was a brokerage commission, not a contract for the sale of land). Therefore, the chancellor properly found the statute of frauds did not render unenforceable the oral agreement for Grant to purchase the property on Donelson’s behalf.
*574 III. Constructive Trust
¶ 21. Grant takes issue with the chancery court’s finding that a constructive trust existed. Grant contends that Donelson failed to prove the existence of a constructive trust by clear and convincing evidence. Grant contends that there was no wrongful conduct that would justify the imposition of a constructive trust.
¶ 22. The supreme court has explained “that a constructive trust is a means recognized in our law where under one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs.” In re Estate of Horrigan v. Ladner, 757 So.2d 165, 170 (¶ 25) (Miss.1999) (citations omitted). Abusing a confidential relationship is one type of wrongful conduct that may justify the imposition of a constructive trust. McNeil v. Hester, 753 So.2d 1057, 1064 (¶ 24) (Miss.2000). “An abuse of confidence ... may be an abuse of ... an informal relationship where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one. The origin of the confidence reposed is immaterial.” Joel, 43 So.3d at 431 (¶25) (citations omitted).
¶ 23. The record shows that Grant and Donelson were neighbors who had become friends and had maintained an amiable relationship up to the filing of this claim. And each had helped the other as needed during their friendship. For example, Do-nelson loaned money to Grant, mowed her lawn, and drove her to work. Grant assisted Donelson when he was ill.
¶ 24. The record also shows that Grant abused her friendship with Donelson. Do-nelson suffered from health problems when he and Grant initially entered their oral agreement. Donelson repeatedly testified that based on his previous friendship with Grant, he trusted her to place the warranty deed in his name as she had promised. Therefore, Donelson had not required a written agreement from her. He also stated that his health problems had prevented him from attending the closing, but he had trusted Grant to carry out her promise. The chancellor’s finding that Grant had abused Donelson’s confidence in them friendship to gain ownership of the house is fully supported by the record. Therefore, this issue lacks merit.
¶ 25. The chancellor properly imposed a constructive trust although Grant and Donelson had an oral agreement. As noted above, their agreement was not for the sale of land. Further, a constructive trust is an exception to the statute of frauds. Neyland v. Neyland, 482 So.2d 228, 230 (Miss.1986) (“The statute of frauds has no application to a constructive trust or equitable lien which arises by operation of law.”). Therefore, we find no error in the chancery court’s judgment.
CONCLUSION
¶ 26. The chancellor correctly found the existence of a constructive trust and that equity required that Donelson receive fee-simple title to the house.
¶ 27. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON AND MAXWELL, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. ROBERTS, J., CONCURS IN RESULT ONLY. FAIR, J., NOT PARTICIPATING.

. Donelson testified that he gave $32,600 to Grant to pay off the mortgage on the house. Approximately four days later, he gave her an additional $8,000 to pay off a second mortgage on the house