IRVING, P.J., for the Court:
¶ 1. National Western Life Insurance Company (National Western) filed a motion in the Lee County Circuit Court to enforce a settlement agreement between National Western, Creative Marketing International Corporation (CMI), and Charlene Dunn. Dunn filed her own motion to enforce the settlement agreement pursuant to the terms stated therein. The circuit court granted Dunn’s motion and entered a final judgment against National Western. Feeling aggrieved, National Western appeals and claims that the circuit court erred in denying its motion to enforce the settlement agreement and, in the alternative, failing to reform the agreement to reflect the parties’ intent.
¶ 2. Finding that the circuit court erred in granting Dunn’s motion to enforce the *671 settlement agreement, we reverse the circuit court’s judgment and remand this case for further proceedings consistent with this opinion.
FACTS
¶ 3. In 1997, John Murphy approached Dunn at her home on several occasions to sell her various life insurance policies, annuities, and other securities. Dunn eventually purchased multiple policies, including the two annuities at issue, which Murphy sold on behalf of National Western. She claimed that as a result of her conversations with Murphy, she understood those annuities to be ten-year annuities with a low surrender charge, between two and five percent or less. However, they were actually seventeen-year annuities with a twenty-five percent surrender charge for the first three to seven years.
¶ 4. Dunn filed her initial complaint against Future Benefits Incorporated (Future Benefits) and Murphy, an agent and employee of Future Benefits, alleging negligence, gross negligence, breach of fiduciary duties, breach of the covenant of good faith, and breach of contract regarding Dunn’s purchase of the life insurance policies and annuities. She later filed an amended complaint adding American Equity Investment Life Insurance Company, National Western, and Jefferson Pilot Life Insurance Company as defendants. She then filed a second amended complaint, adding CMI, a brokerage house which sold the listed defendants’ insurance and annuity products, as an additional defendant.
¶ 5. National Western filed a motion for summary judgment. Although the circuit court held a hearing on the summary-judgment motion, it set a trial date instead of ruling on the pending motion. CMI and Dunn later filed a joint motion for continuance, and the circuit court issued an order continuing the case and ordering the parties to mediation. National Western, CMI, and Dunn were the only parties that participated in the mediation. The parties reached a settlement and executed a settlement agreement, which stated in pertinent part:
The parties in the above styled and numbered cause agree to settle any and all claims asserted in the above styled and numbered cause and arising out of Plaintiffs relationship with Defendants [and] all affiliated companies, excluding John A. Murphy [and] Future Benefits, Inc.... Plaintiff! ][is] to execute [a] Full and Final Release ... [and] Plaintiff! ] agree[s] to indemnify and hold harmless [National Western] and [CMI] and all affiliates for any and all legal actions related to this litigation in any manner[.]
The day after mediation, Dunn returned home and reviewed her personal file containing her annuity information. She called the National Western headquarters and was given the figure of $177,495.29, which she understood to be the present value of her annuity accounts. Since this figure was considerably more than the $155,000 that she agreed to in the settlement agreement, her attorney sent a letter to National Western and CMI’s attorneys declaring that
any agreement wherein Ms. Dunn received a total of $155,000.00 while having in her annuity account[s] with National Western a balance of $177,495.29 does not make her whole. In fact, she suffered a loss of $177,495.29. Hence, the proposed settlement of $155,000.00 on the presumption that Ms. Dunn only had $107,352.00 in her accounts is tantamount to surrender charges being imposed upon Ms. Dunn. Thus, it is Ms. Dunn’s contention that any proposed settlement of the matter is null and void. *672 There [was] certainly no meeting of the minds.
¶6. National Western contended in its motion to enforce that it was clear during mediation that Dunn would not be allowed to retain ownership of her annuities pursuant to the agreement. National Western argued that there was no representation made as to the amount of money that Dunn had in her accounts with National Western. Further, National Western claimed that its counsel explained that the goal of the settlement offer was to put Dunn in the position that she would have been in had she never purchased the annuities from National Western, not to pay her what her accounts would be worth at the end of her annuities’ terms if she did not make any additional withdrawals.
¶ 7. In her motion to enforce, Dunn argued that surrendering her annuities was an additional term not agreed upon at mediation, not covered in the settlement agreement, and not discussed at all until National Western filed its motion to enforce. As such, Dunn insisted that the settlement agreement be enforced pursuant to the specific terms stated therein. The circuit coui't held a heai'ing on both motions, and subsequently granted Dunn’s motion and denied National Western’s motion.[1] After National Western filed a motion for entry of a final judgment pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedui'e, the circuit coui't entered a final judgment in Dunn’s favor against National Western.
¶ 8. Additional facts, as necessary, will be related in the analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 9. The Mississippi Supreme Court has previously stated that “[a] settlement agreement is a contract.” Ill. Cent. R.R. Co. v. Byrd, 44 So.3d 943, 948 (¶ 16) (Miss.2010) (citing McManus v. Howard, 569 So.2d 1213, 1215 (Miss.1990)). “The existence of a contract and its terms are questions of fact to be resolved by the fact-finder, whether a jury, or a judge in a bench-trial.” Ammons v. Cordova Floors, Inc., 904 So.2d 185, 188 (V13) (Miss.Ct.App.2005) (quoting Anderson v. Kimbrough, 741 So.2d 1041, 1045 (¶ 12) (Miss.Ct.App.1999)). Cases that involve the interpretation of contracts are reviewed de novo, as these issues are questions of law. Cherokee Ins. Co. v. Babin, 37 So.3d 45, 48 (¶ 8) (Miss.2010).
¶ 10. National Western contends that, although the settlement agreement does not specifically address the annuities, the plain language in the agreement is broad enough to include the ownership of the annuities as a claim or right that Dunn must release. National Western also insists that Dunn failed to present any evidence that there was a meeting of the minds that she could retain ownership of her annuities. The Mississippi Supreme Court has held that “in order for there to be a settlement there must be a meeting of the minds.” Vaughn v. Rettig, 912 So.2d 795, 799 (¶ 21) (Miss.2005) (quoting Viverette v. State Hwy. Comm’n of Miss., 656 So.2d 102, 103 (Miss.1995)). “The burden is upon the party claiming the benefit of the settlement to demonstrate by a preponderance of the evidence that there was a meeting of the minds.” Id. (quoting Viverette, 656 So.2d at 103).
*673 ¶ 11. In Viverette, our supreme court examined whether there was a meeting of the minds regarding a settlement agreement. In that case, the appellant, a landowner, was initially paid $2,800 by the Mississippi State Highway Commission (Commission) under the “quick take” provision of Mississippi Code Annotated section 11-27-85 (Rev.2004), a section of the eminent domain statute. Viverette, 656 So.2d at 103. The appellant later entered into a settlement agreement with the Commission. Id. However, after the trial court entered a judgment for $5,000, the appellant filed a motion to set aside the judgment and asserted “that it was his understanding that the $5,000 was in addition to the $2,800.” Id. “A witness for the Commission testified that it was his understanding that the settlement was for a gross amount of $5,000.... The [trial] court made no explicit finding that there had been a meeting of the minds with respect to the settlement.” Id. The supreme court found that there was no evidence in the record to indicate that the $2,800 was considered or agreed to be part of the $5,000. Id. Therefore, there was no meeting of the minds, and the judgment could not stand. Id.
¶ 12. Although the facts in the present case are slightly different from those in Viverette, we find Viverette helpful. Here, we do not know whether a meeting of the minds occurred with respect to an ultimate fact. It is clear that the parties agreed to settle for $155,000 and that that figure was predicated upon an understanding that the total amount in Dunn’s annuity accounts was $107,352. It is also clear that the $107,352 figure was given to Dunn during the mediation by National Western and was represented to be the amount left in Dunn’s annuity accounts after withdrawals. However, it is unclear whether that amount was an accurate representation based on the information that Dunn obtained from National Western the following day.
¶ 13. Both parties agree that the objective of the settlement agreement was to make Dunn whole. It is implicit in the objective of making her whole that she would have to surrender her annuities, as allowing her to both retain ownership of her annuities and receive $155,000 in settlement proceeds would do more than “make her whole.” The circuit court concluded that because the settlement agreement did not explicitly mention the surrender of the annuities, their surrender was not part of the settlement agreement. We do not find this omission outcome determinative of whether there was a meeting of the minds with respect to the surrendering of the annuities. Dunn’s attorney’s letter to National Western and CMI’s counsel implies that Dunn expected to be paid what her annuities were worth in exchange for her surrendering ownership in the annuities, as it would not make sense for her to claim that retention of the annuities plus receipt of $155,000 would not make her whole.
¶ 14. Dunn insists that the $177,495.29 figure that she discovered after signing the settlement agreement is the amount that was in her annuity accounts at the time of the settlement agreement. However, National Western argues that the $177,495.29 figure represents what Dunn’s annuities would be worth when they matured if Dunn did not make any more withdrawals from the annuities. We do not know who is right. If $177,495.29, or some other amount greater than $107,352, was in Dunn’s annuity accounts at the time of the settlement, then it appears that there was no meeting of the minds because Dunn would have been mistaken, at the time of the settlement agreement, as to the amount that would make her whole. On the other hand, if indeed there was *674 $107,352 in Dunn’s annuity accounts at the time of the settlement agreement, then it appears that there was a meeting of the minds, and the settlement agreement should be enforced. However, we leave that determination for the circuit court on remand.
¶ 15. As we find that there is a question as to whether there was a meeting of the minds during the mediation that produced the settlement agreement, we reverse the judgment of the circuit court and remand this case for a determination by the circuit court as to whether the parties entered into an enforceable settlement agreement. In making that determination, the circuit court may decide, without the aid of a jury, any disputed material factual issues. Byrd, 44 So.3d at 947 (¶ 11).
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Although the circuit court did not rule on the motions for summary judgment, the motions became moot when the court granted Dunn’s motion to enforce the settlement agreement.